BASSETT *v.* SIMS, et al.

March 1, 1954

No. 39129        55 Adv. S. 3        70 So. 2d 530

*Laurel G. Weir,* Philadelphia, for appellant.

*Collins & Collins,* Laurel, for appellees.

Etheridge, J.

This is a child custody suit, brought by the mother against the paternal grandparents. Appellant, Mrs. Desta Bassett, filed in the Chancery Court of Jones County, Second District, a petition for writ of habeas corpus for custody of her three children, Grover Sims, 11 years of age, Janice Sims, 8 years, and Roger Sims, 6 years. It was charged that the defendants, W. W. Sims and wife, Ida Sims, unlawfully detained appellant's children, and that the appellant was their natural mother and a qualified person to have their custody

and control. The defendants, the paternal grandparents, filed an answer in which they were joined by the children's father, A. W. Sims. The answer denied the averments of the bill and stated that the father, A. W. Sims, had had the custody of the children since he and petitioner were divorced; that the defendants, Mr. and Mrs. W. W. Sims, were keeping the children at the request and by the permission of A. W. Sims; and that the petitioner was not entitled to their custody as against A. W. Sims, their father. After a trial the final decree adjudicated that "the petitioner has failed to make out a case satisfactory to the court to sustain the prayer of said petition." Appellant asserts and correctly so, we think, that this decree is not supported by, and is against the great weight of the evidence.

Appellant and her present husband, Robert Warren Bassett, live within one mile of the City of Philadelphia. At the time of the hearing they had been married for about two years, having married on April 3, 1951. Fifteen of appellant's seventeen witnesses were residents of Philadelphia and vicinity, and all of them testified that they were acquainted with petitioner and her husband and had known them for about six months, the period during which they had been living near Philadelphia; and that the general reputation of Mrs. Bassett and her husband in that community as to being of good moral character was good. Among these witnesses was the sheriff of Neshoba County and two preachers in that community, one of them being the pastor of the church of which appellant and her husband were members.

Appellant and her first husband, A. W. Sims, were married about 1940 in Mississippi. They were both residents of this State. In July 1950 she and A. W. Sims moved to Dallas, Texas where Sims obtained a job. Apparently they took the baby, Roger, to Texas with them, and the two older children stayed with defendants, their grandparents, in Mississippi. On

October· 19, 1950, appellant and Sims separated, and on March 17, 1951, appellant obtained a divorce from her first husband in Dallas County, Texas. The defendant in that suit, A. W. Sims, waived process and appearance. The prayer in appellant's divorce bill asked that custody of her three children be placed in their father, but the final decree undertook to award custody to the paternal grandparents, the defendants, Mr. and Mrs. W. W. Sims. At the time of this decree none of the three children were in Texas, the baby having been returned to Mississippi when appellant and Sims separated in October 1950. They were then in the custody of the defendants.

Appellant obtained her divorce from A. W. Sims on March 17, 1951, and seventeen days later, on April 3, 1951, she married her present husband, Robert Warren Bassett. Appellant and Bassett apparently lived in Texas until March 1952, when they moved to Ocean Springs, Mississippi, where Bassett obtained a job as chief engineer for a radio station. During the seven months they lived in Ocean Springs in 1952, they lived in a trailer, and during all of this period the children remained in the custody of the grandparents, the defendants. In November 1952 appellant and her husband, Bassett, moved to Philadelphia, Mississippi, where he obtained a job as a radio engineer and announcer in a radio station. This case was tried six months later at which time appellant's husband was employed in that same job at a weekly salary of $65. Appellant has one child, who is a little over a year old, by her second husband. Mr. and Mrs. Bassett are renting a practically new five-room house about a mile out of Philadelphia in a well settled neighborhood. They have modern·conveniences and ample sleeping quarters for the three children, as well as their baby. They are members of a local church, having transferred their letter there from the Ocean Springs' church.

Mrs. Bassett testified that she and her husband bought practically all of the three children's school clothes; that they have purchased hospital insurance for them, that almost every month they take them something; and that every Christmas she and Bassett brought them their Christmas toys and presents. Petitioner testified that she loved her children very much and that her husband wanted them "almost as much as I do." Mr. Bassett who is 33 years of age, said that he had learned "to love those children very much"; and that every payday he gave his wife his check and that she bought the children whatever she thought they needed. He was in the army for five years, after which he moved to Texas, where he was going to school and working in a hospital at the time he met appellant. He testified that he was able to take care of appellant's three children, as well as their baby, and that he would see that they got proper training. He told about his job in Philadelphia and said that he did not plan on leaving that city. He is in good health and able to take care of appellant and her children, and he wants them to live with them. Bassett has been married once before. In the early part of 1951 he obtained in Texas a divorce from his first wife.

Both of the paternal grandparents, Mr. and Mrs. W. W. Sims, testified. They are 60 years of age, and live about a mile and a half from Soso, in Jones County. They are share-croppers on a place owned by Shows. It is undisputed that they are of good moral character, that they have a clean, comfortable house, and that Mrs. W. W. Sims is a good housekeeper and cook, that they have had the children in their custody for about three years, and have taken good care of them, and that they love the children very much.

A. W. Sims, appellant's first husband, testified that he is 35 years of age, and that he lives and works in Dallas, Texas. He said that he always sends his children, through his father, $10 to $15 a week every week

for their support, that he loves them and wants them to stay with his parents, their grandparents; that he is not asking the court to give the children's custody to him, but he wants his father and mother to have them; and that he is not willing for the custody of the children to be changed to appellant.

Appellee's principal point to support the decree below is that appellant's husband, Robert Bassett, according to A. W. Sims' testimony, broke up their home and caused appellant to divorce him; that up to that time appellant and Sims were living together, and that about a month after they met Bassett in Texas, appellant and Sims were separated; that after their separation in October 1950 and before their divorce in March 1951, she was "going with" Bassett. Appellant said that Bassett visited several times in her and Sims' home in Texas but only when Sims was there. She admitted that after her separation from Sims and before her divorce, she would "go with" Bassett occasionally, and that he would come to her sister's home where she stayed. Bassett testified that he met appellant and Sims when he was working around a trailer park in Texas; that he was in their home on several occasions because they invited him; that Sims left appellant "in the cold and she had no job and no money," so he helped her by paying rent on her trailer, and buying food. Because she was in want, he thought that was the natural thing to do. Bassett paid the fee of the attorney who represented appellant in her divorce action. Bassett testified that when appellant obtained her divorce, Sims wanted the custody of the children, but that she did not want to give them to him; and that the arrangement was that the children were to stay with the grandparents because she could not then take care of them.

The chancellor found no evidence in the record "to indicate that the petitioner has abandoned the children." Appellant had at various times visited them and purchased wearing apparel and toys. She loves the chil-

dren. The trial court found that the Texas court had no jurisdiction to award custody of the children then in Mississippi to defendants. It said that the grandparents were of good character, loved the children, and took proper care of them, and that appellant and her husband were also of good character and reputation. The question was ''whether the proof shows the mother, the petitioner, to have forfeited her right to the custody of these children by the way she has lived.'' The chancellor said that Bassett and appellant were seeing each other before appellant was divorced from Sims, and that she married Bassett 17 days after her divorce. He then concluded: ''Whether that conduct is sufficient to say that a mother is not entitled to her children and is not fit and proper to have the children'' is the question. ''. . . I believe that the petitioner is now travelling on the road that will eventually perhaps allow her to have the custody of her children but I don't believe that under all the facts and circumstances that she has traveled that road long enough. Six months is a short time and she says, and I believe her, that she loves her children. That is what she says today and I find it to be somewhat in conflict with her actions on April 3, 1951, when, seventeen days after she divorced their father, she married her now present husband but I am not going to close the door . . .''

However, the chancellor said that if he had the power to award appellant part-time custody in a habeas corpus proceeding, he would do so, but that he did not think that he has as wide a discretion here as in a regular custody proceeding in chancery. Hence the final decree denied the petition on the ground that appellant had failed to make out a case to sustain the prayer.

In brief, the chancery court found as a fact that the mother, appellant, and her present husband are of good moral character, and that is undisputed. They are able to take care of the children and give them adequate training. The trial court further found that

appellant has not abandoned the children, and that she loves them. Her husband loves them and wants them to live with his family. The trial court said that if it had the power, it would award to this mother part-time custody. The father of the children, A. W. Sims, lives and works in Dallas. He doesn't want their custody transferred to him, but desires his parents, their grandparents, to keep the children.

Under these circumstances we think that the trial court erred in denying custody to the mother. ▪▪▪ The welfare and best interests of the children are the controlling elements, ▪▪▪ but the court should always give custody to the person having the legal right thereto, unless circumstances justify a different result. ▪▪▪ And a mother who is of good moral character and reasonably able to provide for the children is entitled to their custody as against a collateral relative. Moore v. Christian, 56 Miss. 408 (1879).

▪▪▪ The chancery court's denial of the petition was based upon the fact that appellant was having dates with her present husband before she had divorced her first husband but after their separation, and upon the further fact that she married Bassett seventeen days after divorcing Sims. Although these acts, which occurred at least two years prior to the hearing in this case, could be considered by the trial court along with other evidence of probative value as to appellant's present character and fitness, the court applied the wrong test. Amis, Divorce and Separation in Mississippi (1935), Section 214, p. 289, states the proper test: ▪▪▪ "But the actual present character, conduct and associations, as well as the reasonable probabilities for the future should control. Because since the good of the child is the chief concern of the court, no award will be made to one party merely as a reward for former virtuous conduct, nor denied to the other as a punishment for past misdeeds. For it sometimes happens that one who, under the lure

of strong temptation, has grievously sinned, has yet repented and reformed and would train a child as wisely and well as if no such transgression had ever occurred. Nor should a parent be denied the custody merely because of adverse rumors of reputation without any proof of immoral acts, or of conduct which would reasonably indicate it.''

67 C. J. S., Parent and Child, Section 12, p. 662 says: ██ ''A parent who is, at the time when the question arises, a suitable and competent person to have the custody of the child will not be refused such custody because at some time in the past his conduct, habits, health, or circumstances were such that he would not then have been a proper custodian.''

Here the children are in the custody of collateral relatives, their paternal grandparents. Their father, A. W. Sims, who, under Code Section 399 has an equal right to custody of them with their mother, other factors being equal, lives and works in Dallas, Texas. He apparently has not married again and he testified that although he wanted the children, he wanted them retained in the custody of their grandparents. Hence this suit must be treated as one between a mother and collateral relatives, the grandparents.

██ In a suit between a parent and collateral relatives, it has long been the established rule that it will be presumed to be for the best interests of the children to be with their natural parent, unless his or her unfitness or abandonment of the children is shown. Hibbette v. Baines, 78 Miss. 695, 703, 29 So. 80 (1900) ; Newman v. Young, 215 Miss. 467, 61 So. 2d 296 (1952) ; Amis, Divorce and Separation in Mississippi, Section 212. ██ There is not a word of testimony in the present record that appellant is at the present time of bad moral character or otherwise unfit to have custody of the children, and in fact the chancellor found that both she and her husband were of good moral character. He also

found that she had not abandoned her children. Accordingly the chancery court should have sustained the prayer in appellant's petition, and the decree is reversed and judgment rendered here for appellant. We do not consider here any issues which might subsequently arise in a contest for custody between appellant and the childrens' father, A. W. Sims. Nor do we find it necessary to consider whether the custody provisions of the Texas divorce decree were valid at the time they were made, since the trial court was dealing with changed circumstances and facts in existence over two years after that date. Boswell v. Pope, 213 Miss. 31, 56 So. 2d 1 (1952); Cole v. Cole, 194 Miss. 292, 297, 12 So. 2d 425 (1943); Kincaid v. Kincaid, 207 Miss. 692, 700, 43 So. 2d 108 (1949); 17 Am. Jur., Divorce and Separation, Secs. 684, 687, 688.

Reversed and judgment rendered for appellant.

*McGehee, C. J.,* and *Lee, Holmes* and *Arrington, JJ.,* concur.