### DREW *v.* DREW

No. 43005 April 13, 1964 162 So. 2d 652

*Threadgill & Hicks,* Columbus, for appellant.

*James A. Walters,* Columbus, for appellee.

BRADY, TOM P., J.

The appellant here filed his bill of complaint in the Chancery Court of Lowndes County, Mississippi, returnable to the January 1963 Term of the court, against the appellee here, former wife of appellant, seeking custody of the two minor children of the appellant and the appellee. Mary Lena Drew, the first child, was born on February 3, 1952. Danny Michael Drew, the second child, was born on October 10, 1953.

The appellee answered the original bill of complaint and filed a cross bill wherein she sought to retain the permanent care, custody and control of the minor children, having denied the allegations of the bill of complaint. The appellant answered the cross bill denying that the appellee was entitled to the relief sought in the cross bill.

The chancery court found that the appellee was not morally fit to retain the care, custody and control of the children. Although there was no finding that the appellant was mentally, morally, or spiritually unfit to be awarded the permanent custody of these two children and that there was no abandonment of these children, the lower court refused to award the permanent custody to the appellant, and placed the children in Palmer's Orphanage in Columbus, Mississippi, a well-operated orphanage belonging to the Presbyterian Church in Columbus, Mississippi. It is from the refusal of the lower court to award the permanent care, custody, and control of the appellant's minor children unto the appellant in the absence of a showing and finding that the appellant was an unsuitable person to have the care and custody of his children or that appellant had abandoned the children that this appeal is taken. This constitutes also the sole assignment of error which is urged by the appellant. The question therefore for consideration by this Court is whether or not under the facts the Honorable Chancellor of the Chancery Court of Lowndes

County, Mississippi made a wise, proper and lawful decision under the facts in refusing to award the permanent custody of the minor children unto the appellant or the appellee.

Restricting ourselves solely to the facts which are requisite in determining that basic issue, we find that the record reveals the appellant is a former master sergeant in the United States Air Force who was retired on December 31, 1962, after having completed twenty years of service. He was honorably discharged without any blemish on his service record. Appellant and appellee were first married on September 5, 1950, and of this marriage and union the two children were born. Appellant and appellee were divorced in January of 1959, but after a few months of separation, in the interest of the children and for other reasons, the appellant and appellee were remarried in the summer of 1960. This marriage lasted until July of 1961, when the appellee permanently separated from the appellant, while they were stationed in Bossier City, Louisiana. The appellee returned to Lowndes County, Mississippi in July of 1961, taking the minor children with her, and remained in the city of Columbus until the hearing of the lower court in January of 1963. It further appears that appellant and appellee were granted a separation "mensa et thoro" by the Twenty-sixth Judicial Court of Bossier Parish, Louisiana, by order dated June 15, 1962. This decree apparently made no provisions with respect to the custody of the children. After the separation in July of 1961 and until the date of the Louisiana decree granting the aforesaid separation "mensa et thoro", the appellant had been paying in support of appellee and his minor children the sum of $176.90 per month. This is the allotment which is made by the United States Air Force under such circumstances.

Subsequent thereto and subsequent to the remarriage of the appellee, up to the time of the trial in the lower

court, the appellant continuously paid through the Air Force the sum of $96.90 per month for the support of his minor children. The record discloses the appellee has been married four times. She was first married to one Robert Jett in 1942, which marriage was unsuccessful. Appellee advised appellant of her first marriage subsequent to their first marriage in September 1952. Appellee divorced appellant in January 1959, and on the 27th of April 1959 she married one Johnny Byrd. While married to Johnny Byrd they engaged in a beer joint, dance hall operation in Columbus, Mississippi, and in the State of Tennessee. It appears that they also spent some time in Tuscaloosa, Alabama. The children were with them on these endeavors.

The record discloses furthermore that prior to appellee's divorce from appellant she was living with the said Johnny Byrd and operating the aforesaid night club. It appears that her own brother, Willie Harold, who testified that his sister, the appellee, practically "raised" him, saw the appellee engaged in unlawful cohabitation with one O. C. Taylor. This occurred subsequent to her divorce from appellant and was in the year 1962. It appears that she was also seen on another occasion having clandestine relationships with another man and that this occurred approximately one month before the trial of this cause. The record discloses that the appellee continued to work in beer halls and that her work required her to work from three in the afternoon until midnight. The record discloses that her children were unattended or, if they were attended, they were attended by a person who lives across the street, a neighbor, but who did not reside in the same house with her children. While it is true that the appellee did work in a garment factory immediately prior to the trial of the case, the record clearly shows that she much preferred to work around cafes, beer parlors and

places of amusement rather than in garment factories where hard, serious work is engaged in.

The appellee testified that the appellant never abused the children and he never at any time struck the appellee; that he never missed sending the children gifts on their birthdays and on Christmas. The record discloses that he wrote to them and they wrote to him infrequently. Appellee further conceded that the children loved their father, the appellant, and the appellant himself testified that he deeply loved his children and has done and will do all that he can in their behalf.

Appellee's brother testified that when he lived with his sister, the appellant spent time with his family; that he had never seen the appellant intoxicated. The appellant acknowledges, however, that he is a drinking man and the record discloses that the appellee is likewise not averse to intoxicating beverages. The record shows that the appellant did spend some time with his children but fails to show how much time he actually spent with them, in playing with them, showing them affection, and in giving them counsel and guidance.

We have deliberately refrained from outlining any additional data with reference to the moral or spiritual qualifications of the appellee which would disqualify her from having the care and custody of these children entrusted to her. It will suffice to say that in our opinion the chancellor had ample grounds upon which to base his findings that the appellee is an unfit mother, morally and spiritually, to retain the care, custody and control of the two minor children, and furthermore that the chancellor was likewise justified in finding that it would be to the best interest of said children for their permanent care, custody and control to be vested in the Presbyterian Palmer Orphanage of Columbus, Mississippi. It is to be noted that the chancellor permitted both appellant and appellee to visit with the children at times which are agreeable with the officials of Pal-

mer's Orphanage. He likewise required the appellant to pay the sum of $50 per month unto the Chancery Clerk of Lowndes County for the support, maintenance and care of said children and required the appellee likewise to pay the sum of $20 for the maintenance, support, education and care of said children. It is contended that the appellant has failed to pay two months of the support which was ordered to be paid in behalf of his children.

■■ ■ Insofar as the failure of the chancellor to award the permanent care, custody and control of the appellant's minor children unto the appellant in the absence of a showing and finding that the appellant was an unsuitable person to have the care and custody of his children or that appellant had abandoned the children is concerned, we wish to point out that it is a long, well established rule of this Court and this Court has repeatedly held that it is reluctant to set aside the findings of fact of a chancellor who heard the testimony and observed the witnesses, their demeanor and attitudes, unless said findings are clearly shown to be erroneous, unsupported by sufficient evidence or against the preponderance of the credible testimony. Early v. U. S. Fidelity & Guaranty Co., 181 Miss. 162, 176 So. 720; Stringer v. Stringer, 209 Miss. 326, 46 So. 2d 791; Cassell v. Cassell, 211 Miss. 841, 52 So. 2d 918; Thames v. Thames, 222 Miss. 617, 76 So. 2d 707; Jones v. Jones, 227 Miss. 1, 85 So. 2d 580; Towles v. Towles, 243 Miss. 59, 137 So. 2d 182; Spiers v. State, 231 Miss. 307, 94 So. 2d 803, and Ellis v. Ellis, 248 Miss. 483, 160 So. 2d 904.

The record discloses that all pertinent facts relating to the moral, spiritual and educational qualifications of both appellant and appellee were clearly revealed by the testimony in this record, the demeanor of the litigants, the attitude and responses of appellant and appellee, together with their witnesses, were all carefully

observed by the learned chancellor. The record does not reflect any abuse or failure of proper consideration of the pertinent facts on the part of the chancellor and we therefore decline to set aside his findings of fact herein.

 ██ Returning now to the question of whether or not the lower court erred in not awarding the custody of the children to the appellant in the absence of a finding that the appellant was an unsuitable person to have the care and custody of the children or that he had abandoned the children, we do not feel that these are the sole criteria which a chancellor may use in determining who is best qualified to have and take care of the children in a broken home. There are other criteria which are of grave importance in deciding this serious question. Some of these criteria are the appellant's present and future financial condition, the general and specific environment in which the children will be reared, the proximity, class and character of the public schools, Sunday schools and churches which they will attend, the general environmental conditions of the neighborhood in which they will reside, the health and attitude of those persons who own the home in which the children are to live, the physical, financial and moral condition of the appellant's sister and brother-in-law, and whether or not the sister and brother-in-law themselves are desirable, proper and fitting persons with whom the minor children will be thrown in close daily contact. All of these important factual questions merit careful consideration by the chancellor in determining whether it is wise that the care, custody and control of the children should be entrusted to the appellant. This decree should not be construed as a final and complete bar to the rights of the appellant insofar as obtaining the permanent care, custody and control of his minor children is concerned. ██ We are constrained to state however that in our opinion, and we

so hold, the chancellor was eminently correct in denying the permanent care, custody and control of the minor children to the appellant at the present time, for the reason the appellant wholly failed to corroborate his testimony that his sister and her husband were willing to welcome into their home the appellant and his two children, and failed to show that these persons, their home, financial condition, neighborhood and the other criteria would be desirable and beneficial for the minor children. The chancellor knew full well that the moral, spiritual and the physical needs of these children would be well taken care of in this orphanage. The chancellor likewise knew that he would retain jurisdiction and control over these minors, so that he could well protect their best interests and see that they were well served. If the chancellor, on the mere showing of the appellant himself, had relinquished his control over these children and had permitted the appellant to take them into the foreign state of Michigan, he would have lost jurisdiction. There is no possible way for the court to have ever regained jurisdiction and control over those children in the event the statements of the appellant, though made in good faith, turned out to be erroneous, or were false to begin with. Furthermore, some contingency or emergency might arise which would prevent the sister and her husband from permitting the appellant and his children to remain there. All of these potentials must be resolved by a chancellor and, being unable to do so from the inconclusive testimony offered in this cause, the chancellor wisely determined not to authorize that which might have resulted in a grave injustice to these two minor children, insofar as their physical, moral, and spiritual welfare is concerned.

Cases of this nature are sad commentaries on broken homes. An earnest chancellor is sometimes sorely tried in determining what is actually best for the children, the foremost objective of equity. Bassett v. Sims, et al.,

220 Miss. 210, 70 So. 2d 530; Shoffner v. Shoffner, 244 Miss. 557, 145 So. 2d 149. The chancellor was properly careful not to offend either of these little ones and cautious not to hang a millstone about his own neck.

For the above reasons, this case is affirmed.

Affirmed.

*Lee, C. J., Ethridge, Gillespie and Patterson, JJ.,* concur.