205 So.2d 650 (1968)
Beatrice McLin NEWMAN
v.
Louise SAMPLE.
No. 44563.
Supreme Court of Mississippi.
January 2, 1968.
B. Galloway Austin, Jackson, for appellant.
Mary Libby Payne, Brandon, for appellee.
GILLESPIE, Presiding Justice:
Beatrice McLin Newman filed her petition for writ of habeas corpus in the Chancery Court of Rankin County, Mississippi, against Louise Sample for the custody of petitioner's twin sons who were born August 17, 1961. The defendant answered the petition and contended therein that petitioner had abandoned said children and was not a fit and proper person to have the care and custody of said children. After a hearing on the merits, the chancellor rendered an opinion in which he found that petitioner had abandoned her children and the petition was dismissed. The petitioner Beatrice McLin Newman appealed to this Court.
Petitioner is a native of Rankin County, Mississippi, and is a niece of the defendant, *651 Louise Sample. Petitioner moved to Chicago, Illinois, and on the 17th day of August, 1961, the two children involved in this case, Denis McLin and Derek McLin were born to the petitioner out of wedlock. Before their birth appellee asked for their custody. Shortly after their birth the children were sent to live with the defendant in Rankin County and, except for a number of trips to Chicago, have been living with the defendant and defendant's husband on a small farm in Rankin County, Mississippi. Up until about eight months before the filing of the petition in this case there was a close and cordial relationship between the petitioner and the defendant. The defendant took the children to Chicago from time to time to visit petitioner and other relatives. The petitioner came to Mississippi once or twice a year to visit her father and the children. The petitioner and defendant corresponded frequently concerning the children up until about December 15, 1965. The petitioner sent defendant sums of money from time to time which was used by the defendant in support of the children  the amounts being not less than $175 for the year 1962; $170 for the year 1963; $160 for the year 1964; $155 for the year 1965. Differences had begun to arise between petitioner and defendant in December, 1965, and thereafter petitioner sent only $5 prior to the filing of the petition in this case in the latter part of 1966. Petitioners explanation of her failure to send more money during this period was that defendant had declined to allow the children to come to Chicago as petitioner claimed she had promised. There is no showing that the children ever suffered for want of proper support, care and maintenance. Petitioner contends that she sent funds other than the totals above-mentioned which were represented by money order receipts which she had kept. She also stated that she had sent clothing and gifts in addition to funds. The chancellor found that the amount of money petitioner sent to the defendant was not sufficient for their support.
The record contains the testimony of a number of witnesses concerning details of the visits of the defendant and the two children to Chicago and of visits of the petitioner to Mississippi. Defendant says that petitioner did not have sufficient mother love for her children although the defendant herself conceded that petitioner does love her children. A great deal of consideration was given by the chancellor to the question whether the best interest of the children would be served by living in Mississippi or Chicago.
On February 8, 1965, petitioner married Elliott Newman, a resident of Chicago, who is regularly employed with an income of $8,000 per year which is expected to increase to $10,000 within a short time. Petitioner's income for the last year before the trial was about $3,600 so that petitioner and her husband had a combined income of more than $11,000 per year.
There is no testimony in this record to show that petitioner is not a suitable and fit person to have the care, custody and control of her children. The question is whether the chancellor was in error in finding that there had been an abandonment of the children on the part of the petitioner, and whether, if there was no abandonment, there were other circumstances justifying the denial of parental custody.
There is a presumption that the child's parents will love it most and care for it most wisely, and that it will be for the best interest of the child that it should be and remain in the custody of its parents. This presumption can be overcome by a clear showing of immoral conduct of the parent, abandonment of the child by the parent, or other circumstances which clearly indicate that the best interest of the child will be served in the custody of another. Bunkley and Morse, Amis on Divorce and Separation in Mississippi, section 8.01 (1957).
In a case similar in some respects to this case, it was said in Hendrix v. Hendrix, 226 *652 Miss. 110, 83 So.2d 805 (1955) that loss or forfeiture of the parent's right of custody should not be decreed except for grave and sufficient reasons. The proof must be of a positive kind.
In the recent case of In re Hall v. Hall, 202 So.2d 641, (Miss. 1967), an adoption case, the Court said:
Abandonment imports any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child.
In another case not unlike the present one, this Court said that in a suit between a parent and a collateral relative, it has long been the established rule that it will be presumed to be for the best interests of the children to be with their natural parent, unless his or her unfitness or abandonment of the children is shown. Bassett v. Sims, 220 Miss. 210, 70 So.2d 530 (1954).
A careful review of the testimony in this case shows that the petitioner is in a position to properly rear her children. Her husband testified that he worked for Ford Motor Company earning $8,000 per year, that he had the children on his hospitalization policy, and had started a fund for their education. He said he was willing to work and support the children and that he preferred that petitioner stay at home with the children and discontinue working. At the present time petitioner and her husband live in a home belonging to petitioner's mother.
Petitioner has seen her children several times a year. They have visited her and she has visited them. She has contributed at least a part of their support since their birth, and it is not shown that the children have suffered from lack of food, clothing or shelter. Petitioner and defendant have corresponded frequently about the children.
We fail to find support in the evidence that petitioner evinced a settled purpose to forego all parental duties or to relinquish all parental claims to the children. Therefore, the finding of abandonment is manifestly erroneous.
There can be no doubt about the fact that defendant does love these children, although defendant's husband failed to advise the court of his attitude concerning them. Defendant has been faithful and is to be commended for her assiduous care of these children during the time that petitioner was not in a position to care for them.
Defendant correctly argues that a parent may be denied custody of a child even though there is no proof of moral unfitness or abandonment and relies on the case of Drew v. Drew, 249 Miss. 26, 162 So.2d 652 (1964). In that case the father was not shown to be morally unfit and had not abandoned his children. The court denied him the custody of his children under the then existing conditions, but was careful to point out that the decree was not to be construed as a final and complete bar to his rights to obtain the permanent custody and care of his children. The father had no home nor wife and proposed to take the children to Michigan to live with his sister and her husband. The father failed to offer any corroborating testimony that his sister and her husband were willing to keep the children in their home. In the present case petitioner's husband testified of his willingness and desire to have the children, to make a living for them, to educate them, and finally to adopt them. He also demonstrated his present ability to provide for them. In our opinion the Drew case is not controlling.
This Court recognizes the gravity of any decision touching the welfare of children, and our careful study of this record and the applicable rules of law convinces us that there is no tenable basis to forfeit the *653 mother's right to the custody of these children. The decree is therefore reversed and one entered here for the petitioner, Beatrice McLin Newman.
Reversed and rendered.
RODGERS, BRADY, PATTERSON and SMITH JJ., concur.