258 So.2d 233 (1972)
Johnnie Virgil SIMPSON
v.
Paul RAST.
No. 46520.
Supreme Court of Mississippi.
February 7, 1972.
H.K. Van Every, Columbus, for appellant.
Stone & Graham, Columbus, for appellee.
*234 RODGERS, Presiding Justice.
The petitioner, Johnnie Virgil Simpson, filed suit in the Chancery Court of Lowndes County, Mississippi, seeking the custody of Charles Virgil Simpson, Virgie Ann Simpson, and Mark Anthony Simpson, his minor children, whose ages are 15, 13 and 11 respectively. From an adverse decree in favor of the defendant Paul Rast, the petitioner Johnnie Virgil Simpson has appealed to this court and contends that the chancellor was manifestly in error under the facts in refusing the petitioner the custody of his children.
The evidence shows that the petitioner, Johnnie Virgil Simpson, hereafter called appellant, married Patricia Ann Simpson and that the three above-named children *235 were born during their marriage. Thereafter, Patricia Ann left appellant and lived with appellee, Paul Rast, whom she later married. The evidence further shows that Patricia Ann was pregnant by appellee at the time she was divorced from Simpson. Patricia Ann obtained a divorce from Simpson in July, 1962, and a divorce was obtained from appellee by his wife, Betty S. Rast, on July 9, 1963. Patricia Ann and appellee were married in 1963. The three above-named children were placed in the custody of Patricia Ann in the divorce decree, and lived with appellee and their mother until her death on June 14, 1970. After her death the above-named children, along with appellee's other children, stayed with various friends and relatives until appellee's present wife came to live with them as a housekeeper on July 20, 1970. The evidence shows that she and her four children lived in the house with appellee from July 20 until they were married on November 15, 1970.
Appellant had been required under the terms of the divorce decree rendered against him to pay forty dollars ($40.00) per week to Patricia Ann for child support. The chancellor found that appellant had paid less than $500.00 over the eight-year period since his divorce. Appellant testified that the reason he paid no more than this was because he and Patricia Ann had made an agreement that he would not have to give her anything if he would give her a divorce. Also, appellant testified that Patricia Ann told him not to pay her the amount set out in the decree and that appellee told Simpson that he would not have to pay any support if he would stay away from the children. The appellant visited the children several times. On one occasion appellant had kept the children over the weekend out in the country at his father's home. On this occasion appellant and his children went fishing and had a picnic. There was testimony that Rast would not let the children return to their grandfather's again.
Appellee, Paul Rast, was at one time placed under peace bond by Patricia Ann because he had been mean to her. Appellee admitted having been out at Buck's Drive-inn with Patricia Ann's sister, and when Patricia Ann accused him of going with her sister, they had a big fuss with the result that appellee was placed under the peace bond.
The chancellor was of the opinion that the evidence failed to show support of the children by appellant, but he was of the opinion that Rast and his wife were churchgoing people, that Simpson drank intoxicants and that it would be to the best interest of the children to live with the appellee.
The evidence shows that appellant lives in a four-bedroom house with his wife and five children and that appellee lives in a two-bedroom house with his wife and nine children, including the three children who are the subject of this lawsuit. Both appellant and appellee receive about the same income for their labor.
The decree of the chancery court is based largely upon the fact that the petitioner drinks beer sometimes and does not go to church, while the new wife of the defendant does go to church and she takes the children with her. The record shows that the defendant, Paul Rast, admitted "breaking up the home" of the petitioner and his wife. The divorce decree obtained by Patricia Ann gave her the custody of the children, and she never sought to enforce the decree allowing support for the children. It is admitted that the defendant told the petitioner not to come to see the children at his house, but it is contended that the reason for this demand was the fact that petitioner was drunk.
Simpson filed suit seeking the custody of his children less than six months after the death of his former wife, Patricia. The appellant, petitioner, has two children *236 by his present wife and she had three children before her marriage to appellant. The chancellor did not hold that the petitioner was an unfit person to have the custody of his children; nor did he hold that the petitioner had abandoned his children. The court simply held that in his opinion it was better for the children to live with the defendant, Paul Rast.
We cannot agree with this conclusion and must hold that the decree of the chancery court is manifestly erroneous.
To begin with, we must recognize that our society demands, and the law approves the rule, that the natural parents of children have the natural right to the nurture, care and custody of their children. (67 C.J.S. Parent and Child § 11, p. 634 [1950]). This is a rule of all nature as well as a rule for man. The law requires the father to perform this duty to care for his children so long as he is able; and the mother is required to perform this duty when the father is incapacitated. Watts v. Smylie, 116 Miss. 12, 76 So. 684 (1917).
We have also held that one parent of a minor child, whose other parent is dead, has the right to custody of the child unless the living parent is morally unfit or otherwise unsuitable, or unless the living parent has abandoned the child. Ainsworth v. Boykin et al., 198 Miss. 756, 23 So.2d 297 (1945); Stegall v. Stegall, 151 Miss. 875, 119 So. 802 (1929).
The rights of the parents as natural guardians of their children are recognized by statute in this state. The pertinent parts of Section 399, Mississippi Code 1942 Annotated (1956) are in the following language:
"The father and mother are the joint natural guardians of their minor children and are equally charged with their care, nurture, welfare and education, and the care and management of their estates. The father and mother shall have equal powers and rights, and neither parent has any right paramount to the right of the other concerning the custody of the minor or the control of the services or the earnings of such minor, or any other matter affecting the minor. If either father or mother die or be incapable of acting, the guardianship devolves upon the surviving parent. Neither parent shall forcibly take a child from the guardianship of the parent legally entitled to its custody... ."
The law presumes that the parents will love their children most and will care for them most wisely and that it is to the best interest of children that they should be put in the custody of their parents. Newman v. Sample, 205 So.2d 650 (Miss. 1968). It is true that this presumption may be overcome, but in order to do so there must be a clear showing that the parent has (1) abandoned his child, or (2) that the conduct of the parent is so immoral as to be detrimental to the child, or (3) that the parent is unfit mentally or otherwise to have the custody of his or her child. Children are not to be taken from the parents and given to some other person simply because the third person is more able financially to give the child a greater advantage in life. We cited this rule in the case of Kees v. Fallen, 207 So.2d 92 (Miss. 1968), 31 A.L.R.3d 1182 (1970); and quoted from Hibbette v. Baines, 78 Miss. 695, 29 So. 80 (1900). We said:
"This rule has been accepted and is now firmly established as a part of the case law of Mississippi." 207 So.2d at 95.
What then has the petitioner done that would cause the court to deny him custody *237 of his children? His former wife Patricia Ann had legal custody of the three children until her death a few months before the petition was filed asking the court for their custody. Moreover, the testimony shows that Simpson was not welcomed at the home of the defendant.
In Newman v. Sample, 205 So.2d 650 (Miss. 1968) we quoted from Hall's Adoption v. Hall, 202 So.2d 641 (Miss. 1971) as follows:
"Abandonment imports any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child." 205 So.2d at 652.
We do not find evidence in the record in this case that may be characterized as reaching that degree of gravity required to established abandonment by the parent, petitioner, of his children, nor did the chancellor so hold.
Does the fact that the petitioner drinks beer on Sunday and does not go to church reach that clear degree of evidence required to show that the parent is unfit to rear his own children? We are of the opinion that it does not. This is particularly true in this case where under the decree of the chancery court the petitioner's teenage daughter is being delivered into the care of a man who admitted that her mother was his mistress, and whose amorous proclivities are well documented in the record in this case.
We are of the opinion that the decree of the chancery court should be reversed, and we hold that the petitioner is entitled to the care and custody of his three minor children.
Reversed and rendered.
BRADY, PATTERSON, INZER and SMITH, JJ., concur.