435 So.2d 697 (1983)
Lynda Gayle Hall Carraway (Rankin) KAVANAUGH
v.
William Edward CARRAWAY.
No. 53829.
Supreme Court of Mississippi.
August 3, 1983.
*698 Varner, Parker & Sessums, J. Mack Varner, Vicksburg, for appellant.
Nancy J. Ruhl, Jackson, for appellee.
Before WALKER, P.J., and DAN M. LEE and ROBERTSON, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from an order of the Chancery Court of the First Judicial District of Hinds County which modified a prior separation agreement incorporated in the custody order. The modification effectively changed the primary custody of two of the three children of the parties from Lynda Gayle Hall Carraway (Rankin) Kavanaugh, appellant, and awarded the same to William Edward Carraway, appellee. We reverse.
Appeal was perfected to this Court after the chancellor refused to reopen the case to take additional evidence, but granted appellant's petition to appeal without supersedeas. Pending the delivery of Donna to the appellee, this Court granted an appeal with supersedeas. Six errors were assigned by the appellant, but we only consider assignment of error No. II, which is as follows:
The Lower Court erred in taking custody of the minor children of the parties from Appellant and granting such custody to the Appellee.
Lynda Gayle Kavanaugh, appellant, and William Carraway, appellee, are certainly no strangers to each other or to the courtroom. They have been married, divorced, remarried and redivorced. As a result of the first marriage they are the parents of three minor children, Donna, age 17; Michelle, age 15; and Brook, age 11. At the time of the second divorce the parties entered into an agreement regarding the custody and support of the children. The agreement, adopted by the chancellor in the final decree, dated October 11, 1976, provided that Mrs. Kavanaugh was to have custody of Donna and Brook, and Mr. Carraway was to have custody of Michelle. Both parents were granted reasonable visitation rights. Mr. Carraway was also ordered to pay $175 per month in child support, maintain medical and hospitalization insurance on the children, and pay one-half of any medical expenses not covered by the insurance.
On August 31, 1977, Carraway filed a Petition for Modification of Decree in an attempt to gain custody of Donna and Brook. He voluntarily dismissed the petition on January 25, 1978. Three and one-half years later, on October 5, 1981, Carraway filed another Petition for Modification of Divorce Decree, again seeking custody of the other two children. The petition alleged that Donna and Brook were inadequately cared for and that Mrs. Kavanaugh was involved in an adulterous affair with Tom Kavanaugh.
The proof offered at the modification hearing revealed that Mrs. Kavanaugh and Tom Kavanaugh were married little more than a week before. There was also ample testimony that the marriage plans were in the making, and a license applied for, prior to Mrs. Kavanaugh being served in this *699 action. Both Mrs. Kavanaugh and Tom Kavanaugh admitted that Tom had moved into her and the children's residence approximately five weeks before the time of the hearing. Each of them testified that they had experienced bad marriages and that living together before getting married was an effort to prevent making a similar mistake. Both admitted that living together was a moral error.
Other evidence at the hearing dealt more directly with the care and circumstances surrounding two of the three children. Both Kavanaughs testified that Donna and Brook are happy, well adjusted children. Both children own their own horses and compete in horse shows. Each child has a separate bedroom which is well furnished and comfortable. Mr. Carraway took the stand and testified that he would build onto his house to accomodate Donna and Brook should he be awarded custody.
Mrs. Kavanaugh also testified concerning her and the children's relationship with each other and Mr. Carraway. She testified that Carraway was habitually late in sending support payments and was four months behind just two days prior to filing the instant action.
There was disputed testimony over whether Carraway had paid certain dental and medical bills of the children, Mrs. Kavanaugh said he had refused, and Carraway claimed the bills were not substantiated. Each side presented a number of character witnesses who perfunctorily testified to the parties' good character and parental qualities. The chancellor did not permit the children to testify.
The chancellor issued an opinion which did not address the care and circumstances of the children. Rather, the sole matter of concern to the chancellor was the month that Mr. and Mrs. Kavanaugh lived together prior to their marriage. The order stripped Mrs. Kavanaugh of custody of Donna and Brook, placing them in the care of their father, Mr. Carraway. The order also obligated Mrs. Kavanaugh to provide for the medical and dental expenses of the children. Mr. Carraway was ordered to pay the one month arrearage which existed at the time of the hearing.

DID THE LOWER COURT ERR IN TAKING CUSTODY OF THE MINOR CHILDREN OF THE PARTIES FROM MRS. KAVANAUGH AND GRANTING SUCH CUSTODY TO MR. CARRAWAY?
The chancellor's sole basis for removing Donna and Brook from Mrs. Kavanaugh's custody was the one month period immediately prior to Mr. and Mrs. Kavanaugh's marriage that they lived together. Is this fact alone sufficient reason for a change of custody?
The decisions of this Court make it clear that a decree granting child custody is not to be modified so as to change custody from one parent to another unless there has been a material change in circumstances which adversely affects the child's welfare occurring since the original decree. Cheek v. Ricker, 431 So.2d 1139 (Miss. 1983); O'Neal v. Warden, 345 So.2d 610 (Miss. 1977); Sistrunk v. Sistrunk, 245 So.2d 845 (Miss. 1971). The appropriate inquiry then becomes whether the one month of cohabitation between Mr. and Mrs. Kavanaugh prior to their marriage was a "material change in circumstances which adversely affects the children's welfare."
This Court has had prior occasion to address a mother's indiscretions and their bearing on her right to retain custody of a child. In Woodruff v. Woodruff, 418 So.2d 775 (Miss. 1982) the facts closely resembled those in the case sub judice. There the mother was awarded custody of the parties' five and one-half year old daughter. On a petition to modify, the chancellor changed custody to the father because the mother had shared a bedroom with a man for one month immediately prior to marrying him. Just as in the present case, the mother married the man little more than a week before the modification hearing. This Court reversed the chancellor and held that the brief cohabitation was "not sufficient to constitute a material change in circumstances surrounding the child and the parties, which materially affects the child adversely, *700 and we hold that the lower court was manifestly wrong in so holding." Woodruff at 776.
The Court again dealt with a mother who briefly cohabitated with a man before marrying him in Case v. Stolpe, 300 So.2d 802 (Miss. 1974). In Case the Court refused to hold that such acts were a material change in circumstances. The decision goes on to quote from Bassett v. Sims, 220 Miss. 210, 70 So.2d 530 (1954) which was in turn quoting Amis, Divorce and Separation in Mississippi, § 214, at 289 (1935);
Because since the good of the child is the chief concern of the court, no award will be made to one party merely as a reward for former virtuous conduct, nor denied to the other as a punishment for past mistakes. For it sometimes happens that one who, under the lure of strong temptation, has greviously sinned, has yet repented and reformed and would train a child as wisely and well as if no such transgression had ever occurred. (Emphasis added.)
Both Mr. and Mrs. Kavanaugh admit that their conduct was a moral error, however, there is no evidence in the record that indicates the month of cohabitation had any adverse effect on the children whatsoever. To the contrary, the record discloses that since that time the Kavanaughs have married and worked hard to provide a home for Donna and Brook which combines love, care, comfort, discipline and happiness.
We recognize that it might be argued that this Court has deviated from the "lewd and lascivious" conduct rule mentioned in Pike v. Pike, 317 So.2d 897 (Miss. 1975) cited in the more recent pronouncements of this Court in Woodruff v. Woodruff, supra, and Cheek v. Ricker, supra. We do not do so; rather, we attempt here to clarify the law in this troublesome area. Before custody may be changed, it must be shown that such conduct did substantially adversely affect the children and that it would, therefore, not be in the best interest of the children to remain with the custodial parent. Detrimental effect may not be presumed from such conduct and thus form the sole basis for denying custody. That is to say, the chancellor cannot use the indiscretions of the custodial parent as the sole grounds to change custody, but must look at the overall facts, such as the education, involvement in extracurricular activities at school and in the social life at the present location. In fact, the "totality of the circumstances" must be considered. In effect this means that the chancellor should look at all the circumstances, where they are and where it is proposed to place them.
We are not in any way withdrawing from or modifying the age-old rule that has been pronounced for many years by this Court in Anderson v. Watkins, 208 So.2d 573 (Miss. 1968); Blakeney v. Blakeney, 244 So.2d 3 (Miss. 1971); Culbreath v. Johnson, 427 So.2d 705 (Miss. 1983) where this Court said:
Under established principles regarding our scope of review, see Blakeney v. Blakeney, 244 So.2d 3 (Miss. 1971); we are charged with examining the entire record. In so doing, that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact, must be accepted. Blakeney v. Blakeney, supra, 244 So.2d at 4. If there is substantial evidence to support the findings made by the trier of fact, those findings must be affirmed here. 427 So.2d at 707-708.
Indeed as announced in Cheek, supra, this Court should not sit as reviewing chancellors as was suggested in Eggleston v. Landrum, 210 Miss. 645, 50 So.2d 364 (1951), or in Case v. Stolpe, supra. However, this does not mean that we should leave our common sense at home. Rather, we must abide patience, tolerance and humanity in dealing with child custody cases. When viewing the totality of the circumstances, to determine whether there has been a material change of circumstances adversely affecting the children, the trial court must keep foremost in mind the best interest of the children, so that they may enjoy the stabilizing influence of knowing *701 where home is. Bowden v. Fayard, 355 So.2d 662 (Miss. 1978).
This Court has always encouraged a strong family unit and society demands that this unit be an honorable estate of marriage between parties. They should not simply take up and begin living together without the benefit of marriage and this is particularly true when the parties have minor children living in the home with them. We do not condone such activities now and have never done so, on the contrary we highly condemn same.
In a proper case where such conduct is shown to exist and that such conduct has produced a substantial detrimental effect upon the children  the chancellor should consider same in determining what is the best interest of the children. Therefore, when weighed in light of the totality of the circumstances such conduct may constitute a material change in circumstances. The facts in this case fail to establish this detrimental effect, but on the contrary, the totality of the circumstances dictate leaving the children with the appellant.
It therefore follows that the chancellor's decree of October 29, 1981, is reversed and the decree of October 11, 1976, is reinstated.
REVERSED AND RENDERED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, HAWKINS, PRATHER and ROBERTSON, JJ., concur.
BOWLING, J., takes no part.