766 So.2d 55 (2000)
Kristin Aumann PORTER, Appellant,
v.
Jeremy M. PORTER, Appellee.
No. 1999-CA-00751-COA.
Court of Appeals of Mississippi.
July 18, 2000.
*56 Darnell L. Nicovich, Gulfport, Attorney for Appellant.
Dempsey M. Levi, Sarah E. Berry, Ocean Springs, Attorneys for Appellee.
BEFORE SOUTHWICK, P.J., BRIDGES, AND IRVING, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. The Jackson County Chancery Court granted a divorce on the grounds of irreconcilable differences. Custody of the minor son was awarded to the father. On appeal the mother argues that the custody decision was clearly erroneous, and that visitation for the mother is both inadequate and unduly restrictive. We disagree and affirm after making one clarification to visitation.

FACTS
¶ 2. Kristin and Jeremy Porter were married in their home state of Wisconsin in 1990. On September 13, 1994, Kodiak ("Kodi") Levi Porter was born to the couple. They moved to Jackson County, Mississippi in 1996 because of Mrs. Porter's assignment to Keesler Air Force Base. The couple separated in 1998. At the time of trial, Mrs. Porter was living at Keesler Air Force Base where she is employed as a pharmacy technician. Mr. Porter had moved to his parents' home in Wisconsin and was working as a maintenance electrician.
¶ 3. On February 1, 1999, the parties agreed to a divorce on the basis of irreconcilable differences. The issues still to be determined by the chancellor were the custody and support of the minor child, his medical coverage, and equitable distribution of the parties' two IRA accounts. On February 18, 1999, the chancellor entered judgment granting a divorce based on irreconcilable differences.
¶ 4. What is challenged on appeal concerns custody and visitation. After the June 5, 2000 hearing on a motion for reconsideration, the chancellor granted the parties' request for joint legal custody of the child. Mrs. Porter was to pay 14% of her adjusted gross income, or $182.70, for child support. While the child was with his mother, the father was to pay daycare *57 costs of $62 per week instead of child support. Medical benefits were to be provided the child through his mother's enrollment in the military, but all medical expenses not covered by the military were equally divided between the parents. The mother was entitled to visitation for one weekend each month, during recess from school, during the Christmas holidays including one week before Christmas, alternating Thanksgiving holidays, during spring break from school, and via telephone on one evening each week.

DISCUSSION

I. Child Custody
¶ 5. Mrs. Porter continues to seek primary physical custody; both parties agree that joint legal custody was proper. She argues that the chancellor improperly applied controlling case law. On these excrutiatingly subjective decisions, we give great deference to the chancellor. Keeping the best interest of the child as the primary guide, we will reverse only if the chancellor was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. Williams v. Williams, 656 So.2d 325, 330 (Miss.1995).
¶ 6. The Supreme Court has identified factors that are to be considered in custody decisions:
(1) age, health, and sex of the child;
(2) a determination of the parent that has had the continuity of care prior to the separation;
(3) which has the best parenting skills and which has the willingness and capacity to provide primary child care;
(4) the employment of the parent and responsibilities of that employment;
(5) physical and mental health and age of the parents;
(6) emotional ties of parent and child;
(7) moral fitness of parents;
(8) the home, school and community record of the child;
(9) the preference of the child at the age sufficient to express a preference by law;
(10) stability of home environment and employment of each parent, and other factors relevant to the parent-child relationship.
Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).
¶ 7. The chancellor examined the Albright factors. On most of the factors considered, no advantage was noted for either parent. The chancellor found that Mrs. Porter had been the primary caretaker prior to the separation. He also found that both parents loved their child. The chancellor concluded that the father could offer a stabler home throughout the child's life. Mrs. Porter argues that the chancellor inaccurately assumes that her career in the Air Force includes the possibility of transfers. She testified that Keesler Air Force Base is the type of base at which members of the military are stationed for extended periods. She knew of personnel stationed at Keesler for fifteen years and did not anticipate that she would request a change.
¶ 8. On the other hand, Mrs. Porter states that too much weight was given to the fact that the father was living in his parents' home in a small town, with other relatives living nearby that assisted with raising the child. She acknowledges that having an extended family in close proximity may be beneficial for a child, but insists that it should not be the major factor in a custody decision. She argues that by giving weight to such a factor effectively penalizes her for clearly demonstrating her ability to maintain a successful career, live independently, and take care of her child without the assistance of other family members.
¶ 9. No undue weight was given to this factor. The chancellor concluded that Mr. Porter would maintain the opportunity for the child to have extended family relationships in Wisconsin, including with Mrs. Porter's mother. The father has the advantage *58 of a member of his family taking care of the child during the day, avoiding the child being placed in daycare. Had the circumstances of the parents been reversed, the advantage under Albright also would have been reversed.
¶ 10. It is not for this Court to reweigh the evidence or act as a factfinder. The chancellor referred to legitimate considerations. There is no penalty being imposed, only a benefit being allowed to the child. With the best interest of the child as the focus, the chancellor determined that the father's circumstances were more beneficial than were the mother's.
¶ 11. We find no clear error or application of an erroneous legal standard.

II. Restrictive Visitation
¶ 12. The mother argues that the chancellor geographically restricted her weekend visitation solely to Wisconsin. Similarly, she asserts the chancellor limited the Thanksgiving visitation to Georgia where some of her family resides. She finds both alleged restrictions to be an abuse of discretion.
¶ 13. The chancellor has broad discretion regarding visitation. Weigand v. Houghton, 730 So.2d 581, 587 (Miss. 1999). Both parents must be allowed an opportunity to maintain a healthy relationship with their child. Id. Restrictions on visitation can be placed if they are necessary to avoid harm to the child. Absent such evidence, such restrictions may be an abuse of discretion. Dunn v. Dunn, 609 So.2d 1277, 1286 (Miss.1992). Unless compelling reasons are shown, the non-custodial parent during permitted visits with his or her child should have essentially unfettered discretion regarding "the place and manner" of the visit, bounded by the visitation schedule's transfer locations and time constrictions. Cox v. Moulds, 490 So.2d 866, 870 (Miss.1986).
¶ 14. We will not quibble with either side's interpretation of the chancellor's order. The wording is at least capable of being read to restrict the mother's visitation to Wisconsin during her weekend visits and to Georgia during the Thanksgiving weekend, though we doubt that was the intent. Such restrictions would not be justified by the evidence. The chancellor required that Mrs. Porter both pick up the child and return him in Wisconsin for her weekend visitation. She is entitled to visitation on alternating Thanksgiving holidays. Both are reasonable rules. No restrictions on where mother and son go during those visits were shown to be necessary. We hold that no such restrictions exist.
¶ 15. THE JUDGMENT OF THE JACKSON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., BRIDGES, IRVING, LEE, AND MOORE, JJ., CONCUR.
PAYNE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY KING, P.J., AND THOMAS, J. MYERS, J., NOT PARTICIPATING.
PAYNE, J., dissenting:
¶ 16. Based on my review of the record and precedents, I believe that the chancellor manifestly erred in his decision to place primary physical custody of little Kodi in his father, Jeremy. I readily acknowledge that child custody decisions are, as the majority characterizes them, "excrutiatingly subjective" and that this Court gives great deference to the judgments and findings of our wise chancellors. However, if we find error, we do not hesitate to reverse a chancellor's decision. Estate of Hunter v. Hunter, 736 So.2d 440 (¶ 9) (Miss.Ct.App.1999) (citing Glass v. Glass, 726 So.2d 1281 (¶ 11) (Miss.Ct.App.1998)). As the chancellor, in my view, was in error on both law and fact, I would reverse and render the chancellor's decision. Kristin should have the primary physical custody *59 with reasonable visitation provided for Jeremy.
¶ 17. One concern lies with what I believe to be the chancellor's erroneous choice to surrender Mississippi's jurisdiction over Kodi by allowing the child to go to Wisconsin. In Drew v. Drew, 249 Miss. 26, 162 So.2d 652 (1964), our supreme court sustained a chancellor's denial of primary physical custody in the natural father, who was not determined to be unfit, where the mother had been declared unfit and returned the child to a orphanage within the State of Mississippi:
The chancellor knew full well that the moral, spiritual and the physical needs of these children would be well taken care of in this orphanage. The chancellor likewise knew that he would retain jurisdiction and control over these minors, so that he could well protect their best interests and see that they were well served. If the chancellor, on the mere showing of the appellant himself, had relinquished his control over these children and had permitted the appellant to take them into the foreign state of Michigan, he would have lost jurisdiction. There is no possible way for the court to have ever regained jurisdiction and control over those children in the event the statements of the appellant, though made in good faith, turned out to be erroneous, or were false to begin with.
Id. at 33, 162 So.2d at 655. Of course, in the case sub judice, both parents were found to be fit. However, by awarding custody to Jeremy, a non-Mississippi resident, the chancellor makes it extremely difficult for Kristin to get any future relief because Jeremy, and Kodi likewise, will not be subject to the jurisdiction of the Mississippi courts absent consent by Jeremy or personal service while Jeremy may be in Mississippi, something that is not likely to happen.
¶ 18. Aside from the surrender of jurisdiction over the child, my paramount concern lies in the factual finding regarding the care the child will receive during the day while Jeremy works. The record reflects that Kodi will be surrounded by paternal family and living in close proximity to the maternal grandmother. This, Jeremy argues in brief, is "common sense" to allow family to care for the child as opposed to placing the child in day care. Common sense or not, our polestar consideration is the child's best interest and welfare. Stark v. Anderson, 748 So.2d 838 (¶ 8) (Miss.Ct.App.1999) (citing Whittington v. Whittington, 724 So.2d 922 (¶ 10) (Miss.Ct.App.1998)). I am deeply troubled by the care that Kodi will receive during the day when in Wisconsin. While daily the child will be with family, specifically his paternal grandfather, he will stay in the family owned bowling alley. This will not be at home or in a place where the child can interact with other children his age or engage in important educational and developmental activities, as he could in the federal daycare center that Kristin could regularly monitor. Rather, according to Jeremy, Kodi, while at the family owned bowling alley with his grandfather "cleans the score screens" and "plays in the balls at the Pizza Pit." According to Kristin, while Kodi is in daycare located on the air force base, she picks him up shortly after five o'clock each day. The daycare is a group of fifteen children that Kodi sees everyday, and according to Kristin, Kodi loves going to the daycare. In addition, there is a large play yard, as well as two teachers with whom Kodi interacts daily. Kristin has provided Kodi a good home with his own room, which he would not have living with Jeremy in Jeremy's parents' house in Wisconsin.
¶ 19. The chancellor's decision appropriately outlines the Albright factors. With regard to stability of the home environment, the chancellor, in one portion of his opinion, says that this factor is "inconclusive" but later in his opinion says that Jeremy is better able to provide a more stable home over the long term. This finding was arbitrary and capricious and *60 not based on substantial and credible evidence as there is no evidence that I find in the record to suggest that Kristin will be any less able to provide Kodi a stable home over the long term than Jeremy. Kristin testified that her job does not require her deployment in the event of conflict and that she planned to remain at Keesler for some time. Further, while Jeremy suggested that he did not plan to leave Wisconsin, nothing prevents him from doing so and taking Kodi with him. I find that the chancellor, in his best effort to provide for Kodi's best interest, misapplied Albright to the extent that the chancellor's decision does not serve Kodi's best interests.
¶ 20. It seems to me that the chancellor's decision was based in large part on Kristin's choice of a military career and a common, but unfounded, assumption that her career would require her to move frequently. Further, it appears the chancellor penalized Kristin because Kodi was in a daycare as opposed to being with family. However, Jeremy unlike the father in Drew had not demonstrated an ability to maintain a home for Kodi since the separation. According to his own testimony, he had not planned to seek to find a separate residence until he knew the outcome of the custody proceedings. It seems to me that, based on Mississippi law, the evidence in the record and not on speculation of what might happen in the future, the chancellor was manifestly in error in not awarding the child's custody to his mother, Kristin.
¶ 21. I dissent.
KING, P.J., AND THOMAS, J., JOIN THIS SEPARATE WRITTEN OPINION.