REVISED FEBRUARY 20, 2002

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 00-60547
_____

JESSIE DERRELL WILLIAMS,

Petitioner - Appellant,

versus

S.W. PUCKETT, Commissioner,
Mississippi Department of Corrections
and
ATTORNEY GENERAL,
STATE OF MISSISSIPPI

Respondents - Appellees.

Appeal from the United States District Court
for the Southern District of Mississippi
_____
February 13, 2002

Before JOLLY, HIGGINBOTHAM, and EMILIO M. GARZA, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

On January 11, 1983, Jessie Derrell Williams murdered Karen Ann Pierce. The killing was gruesome. Pierce likely was alive when Williams cut out her genitals. He then stabbed her in the chest and slit her throat. Williams does not dispute that he murdered Pierce nor does he dispute the manner in which he committed the murder. After a trial and conviction for capital murder, a jury sentenced Williams to death. After exhausting his state remedies, Williams sought habeas relief in federal district

court. The district court denied his petition. Williams now seeks a certificate of appealability ("COA"). Williams argues that his constitutional rights were violated because (1) there was insufficient evidence presented to support a kidnaping conviction; (2) the prosecutor failed to turn over potentially exculpatory information; and (3) the jury that re-sentenced Williams (after his first sentence -- but not his conviction -- had been reversed) was not instructed on the elements of kidnaping. To obtain a COA, the defendant must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Williams has not made such a showing with respect to any of his claims. We therefore deny his application for a COA.

I

On the night of January 11, 1983, Pierce went with a date to the Scoreboard Lounge in Gautier, Mississippi. Throughout the night, Pierce consumed beer and drugs. Her date left the Scoreboard early in the evening after she refused to go home with him. Sometime after her date left and before Williams arrived, Pierce was gang-raped. After the rape, Pierce and the rapists remained at the bar. Toward the end of the evening, Williams, Michael Norwood, and Terrell Evans arrived. Evans and Pierce began talking, and Evans convinced her to go for a ride with Williams, Norwood, and himself. On the way out of town, they stopped at a convenience store, bought some beer, and continued on to a secluded

spot off Interstate 10. They smoked marijuana and drank beer. Norwood and Williams proceeded to have sex with Pierce a number of times in the bed of the truck. During one of the times with Williams, Pierce asked him to stop. He did not. Pierce then asked to go back to the Scoreboard to pick up some of her things. The men refused to take her back to the bar. At some point during the night, Pierce and Williams exited the truck. Pierce started to run away from Williams. Williams then tackled her and dragged her into the woods. After waiting awhile, Evans went searching for Williams and Pierce. Evans saw Williams with a knife standing over Pierce's mangled and cut body. As Evans began to walk away, Williams said "I am not leaving until I'm sure she is dead." Fifteen minutes later, Williams returned to the truck. The three men left the scene. Ten days later, Pierce's body was found. Her blood contained .07 percent alcohol and traces of drugs. The cause of death was a knife wound. The location of the wound was the area between Pierce's vagina and her rectum, a wound inflicted while Pierce apparently was still alive.

## II

In December 1983, a Mississippi jury found Williams guilty of committing murder during the course of a kidnaping, a capital murder offense in Mississippi. MISS. CODE ANN. § 94-3-19(2)(e). The jury sentenced Williams to death. Williams appealed his conviction and sentence. In this first of several appeals, Williams asserted

3

numerous claims before the Mississippi Supreme Court. On re-hearing, the court affirmed his conviction but found reversible error at sentencing when the trial court allowed the prosecutor to comment on the possibility of parole and the lengthy appellate review process. The court remanded the case for a new sentencing hearing. Williams v. State, 544 So.2d 782, 794-802 (Miss. 1987). At this hearing, a second jury specifically found three aggravating circumstances that weighed in favor of the death penalty: (1) that Williams was previously convicted of a felony involving the threat of violence to a person; (2) that the capital offense was committed while Williams was engaged in the commission of a kidnaping; and (3) that the capital murder of Pierce was especially heinous, atrocious, and cruel. The jury also found that there were no mitigating circumstances to outweigh the aggravating circumstances. Accordingly, the second jury, like the first jury, sentenced Williams to death. Williams directly appealed this sentence. The Mississippi Supreme Court rejected all of Williams' claims and affirmed the sentence of death. Williams then sought relief from the United States Supreme Court. The Court denied Williams's petition for writ of certiorari. Williams v. Mississippi, 520 U.S. 1145 (1997).

While Williams was pursuing these extensive direct appeals, he was also attacking his conviction collaterally in the state courts. In January 1990, Williams filed an application with the Mississippi

4

Supreme Court under the Post-Conviction Collateral Relief Act ("PCCRA"). The application sought to set aside his conviction and sentence. Williams argued that the state had violated certain state discovery rules when it withheld information regarding a plea agreement between the state and Evans, the key witness in this case. The Mississippi Supreme Court denied the application and held that Williams was procedurally barred from making this claim collaterally. Williams v. State, 669 So.2d 44, 52 (Miss. 1996). In November 1997, Williams filed an application seeking leave to apply for post-conviction relief a second time, claiming ineffective assistance of counsel. The Mississippi Supreme Court denied the application. Williams v. State, 722 So.2d 447 (Miss. 1998).

Williams next turned to the federal courts. In January 1999, Williams filed a petition for relief in the Southern District of Mississippi, in which he raised four claims related to the guilt phase of the trial, six claims related to the sentencing phase of the trial, and an overarching claim of ineffective assistance of counsel. The district court denied relief, and Williams sought a certificate of appealability. The district court denied this request.

Finally, almost eighteen years after the night Williams killed and mutilated Pierce, this case comes before us.

III

5

Before turning to the three claims upon which Williams bases his request for a COA, we will first address the relevant standard of review. Williams filed his federal petition on January 8, 1999. The Antiterrorism and Effective Death Penalty Act (AEDPA) became effective on April 24, 1996. AEDPA therefore governs this case. As we have previously noted, under AEDPA a petitioner is entitled to a COA if he makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c). To make such a showing the petitioner must demonstrate that "reasonable jurists could debate (or for that matter, agree that) the [habeas] petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Barrientes v. Johnson, 221 F.3d 741, 772 (5th Cir. 2000)(quoting Slack v. McDaniel, 529 U.S. 473, 482 (2000)), cert dismissed, 121 S.Ct. 902 (2001).

Our task in this case is to decide whether the district court's assessment of Williams's constitutional claims is either debatable or wrong. See Slack, 529 U.S. at 485. The district court's assessment of the constitutional claims of state prisoners in a habeas petition is restricted. Under AEDPA, federal courts must first decide the contours of clearly established federal law as determined by the United States Supreme Court, and second, decide whether the state court's decision was contrary to -- or involved an unreasonable application of -- that law. 28 U.S.C. §

6

2254(d)(1).

Just as Section 2254(d)(1) restricts the district court's assessment of Williams's constitutional claims, it also limits our review in this COA request. We engage in the following "double barreled" reasonableness inquiry with respect to each constitutional claim: Is the district court's determination that the state court did not unreasonably apply clearly established federal law debatable among reasonable jurists? See Barrientes, 221 F.3d at 772 ("[T]he determination of whether a COA should issue must be made by viewing [Williams]'s arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d).").

With this standard of review in mind we will assess, in turn, Williams's claims that his constitutional rights were violated because (1) there was insufficient evidence to support a conviction for kidnaping; (2) the prosecutor failed to turn over potentially exculpatory evidence; and (3) the sentencing jury was not instructed on the elements of kidnaping.

A

Both the state trial court and the Mississippi Supreme Court found that there was sufficient evidence to support Williams's conviction of kidnaping. The district court concluded that this determination was not contrary to -- and did not involve an unreasonable application of -- clearly established federal law. For the following reasons, this holding by the district court is

7

not debatable among reasonable jurists.

Williams's argument to the district court -- which he re-asserts in his COA request -- was that the only basis for the kidnaping conviction is Evans's testimony that Williams dragged Pierce into the woods.  Williams contends that this testimony is unreliable because of Evans's subsequent admission that he was influenced by threats and promises of the district attorney.[1]  The Supreme Court has clearly established the law with respect to a challenge to the sufficiency of the evidence.  In <u>Jackson v. Virginia</u>, the Court stated:

> [T]he critical inquiry on a review of the sufficiency of the evidence to support a criminal conviction must be not

<hr />

[1]Evans recanted the testimony he gave in Williams's first trial in a 1985 sworn affidavit.  In 1990, Evans recanted this recantation.  In evaluating the impact of these recantations, the Mississippi Supreme Court found that:

> Evans in his 1985 recantation affidavit never stated that he perjured his testimony during the 1983 trial.  Nor does Evans claim to have changed his testimony due to any 'deal.'  He merely states that his testimony was 'colored.'  Later, in the 1990 sentencing hearing Evans returned to his 1983 trial testimony stating that he had no deal with the prosecution before December of 1983, and that he told the truth back then during the original trial.... Because of these facts, not only is the 1985 recanting testimony of Evans suspicious, it appears untruthful.  We hold that it does not undermine the original verdict against Williams.

<u>Williams v. State</u>, 669 So.2d at 54.  Williams failed to challenge this determination by the Mississippi Supreme Court in his federal habeas petition.  Williams has never asserted, much less proved, that Evans gave perjured testimony. The district court, therefore, did not err in considering Evans's original testimony when deciding whether the Mississippi Supreme Court unreasonably applied the relevant standard to Williams's sufficiency of the evidence claim.

> simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt .... [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements beyond a reasonable doubt.

443 U.S. 307, 319 (1979)(citations omitted). The Mississippi Supreme Court correctly identified this federal law as the applicable standard when it evaluated Williams's sufficiency of the evidence claim. Williams v. State, 544 So.2d at 789.

Under Mississippi law, to prove kidnaping the state must show that the defendant (1) forcibly seized and confined or (2) inveigled or kidnaped another, with the intent to cause such a person either (a) to be secretly confined, or (b) to be deprived of liberty or in any way held to service against her will. MISS. CODE ANN. § 97-3-53; Hughes v. State, 401 So.2d 1100, 1105 (Miss. 1981).

In this case, the evidence supporting the kidnaping conviction is substantial: First, there is Evans's testimony that he saw Williams drag Pierce into the woods; second, there is the undisputed fact that Pierce was high on drugs and drunk on alcohol on the night in question, which suggests that she might not have knowingly gone along with the men, that is, she was inveigled; third, there is the men's refusal of Pierce's request to go back to the bar and retrieve her things; and finally, there is the abused and mangled condition of Pierce's body, suggesting a struggle. It may well be true, as Williams argues, that some evidence suggests

9

a finding against kidnaping, including Pierce's voluntary sexual activities with Williams and Norwood and the testimony that Pierce smoked, laughed, and drank with the men prior to her murder. The jury, however, weighed the evidence -- as indeed was its prerogative and duty -- and found that Williams kidnaped Pierce.

The Mississippi Supreme Court held that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found all the elements of kidnaping. The district court found that this holding was not an unreasonable application of the Jackson standard. We think that, given the magnitude of the evidence pointing toward kidnaping, this holding by the district court is not debatable among reasonable jurists. We therefore deny Williams's request for a COA on this claim.

B

The Mississippi Supreme Court found that Williams's due process rights were not violated when the prosecutor and trial judge failed to grant him access to potentially exculpatory information. The district court held that this finding was not contrary to, and did not involve an unreasonable application of, clearly established federal law. We will therefore determine whether this holding of the district court is debatable among reasonable jurists.

It is well-settled law that "suppression by the prosecutor of evidence favorable to an accused ... violates due process where the

10

evidence is material, either to guilt or punishment, irrespective of the good faith or bad faith of the prosecutor." Brady v. Maryland, 373 U.S. 83, 87 (1963). Evidence is material for the purpose of a Brady violation if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 678 (1985).

Williams contends that Pierce's bruised and beaten body was the result of the gang-rape she endured earlier in the evening. Based on this contention, Williams argues that because the prosecutor and the trial court denied him access to the rapists' statements, he could not develop a defense that showed that the gang-rape -- as opposed to a struggle with Williams -- caused the horrific condition of Pierce's body.

A majority of the Mississippi Supreme Court failed to see how the jury could have reached a different result, even if Williams had offered this defense. Williams v. State, 544 So.2d at 792 ("[T]here is no probability, much less a reasonable probability as required by law, that this material would have altered the outcome of the trial.").

In his federal habeas petition, Williams requested an evidentiary hearing on the issue of the "materiality" of the gang rape evidence. The district court denied Williams's request, holding that the Mississippi Supreme Court had not unreasonably

11

applied the Brady/Bagley standard.

In evaluating "materiality" under the Brady/Bagley standard, the question is whether there is a reasonable probability that the jury would have determined that the murder did not occur in the course of a kidnaping, if the prosecutor had not suppressed the gang-rape evidence. Aside from the condition of Pierce's body, there is still ample evidence of kidnaping: the evidence showed that Williams tackled Pierce and dragged her into the woods, that Pierce asked to go back to the bar but Williams refused; and that Pierce was high and drunk on the night of her murder.

Thus, we are in full agreement with the trial court, the Mississippi Supreme Court, and the district court that the statements relating to the gang rape are not material under the Brady/Bagley standard; that is, even if the prosecutor had revealed these statements to Williams and Williams had used these statements in his defense, the jury nevertheless would have found him guilty of murder during the course of a kidnaping. Accordingly, we find that the district court's holding that the Mississippi Supreme Court reasonably applied federal law with respect to Williams's Brady claim is not debatable among reasonable jurists.

C

Finally, we evaluate Williams's claim that his constitutional rights were violated because the jury that re-sentenced him was not instructed on the elements of kidnaping. The Mississippi Supreme

12

Court first found this claim procedurally barred because Williams had failed to make a contemporaneous objection to the jury charge. Williams v. State, 684 So.2d 1179, 1189 (Miss. 1996); see also Cole v. State, 525 So.2d 365, 369 (Miss. 1987)(holding that the contemporaneous objection rule applies fully in death penalty cases). In the alternative, the Mississippi Supreme Court addressed the merits of the claim. It held that Williams was "not entitled to attempt to prove to the [sentencing] jury that he did not commit kidnaping [and to allow Williams to do so], would fly in the face of this Court's prior affirmance of [his] conviction." Id at 1190.

In denying Williams's federal habeas petition, the district court addressed the Mississippi Supreme Court's ruling on the merits; it did not resolve the claim on the basis of the procedural bar. The district court found that the failure to give a kidnaping instruction during a re-sentencing proceeding involving a new sentencing jury does not amount to a denial of due process. Consequently, it found that the Mississippi Supreme Court's analogous holding was not an unreasonable application of federal law. We need not address the substance of the claim because it is clear that the Mississippi Supreme Court correctly applied the procedural bar. The district court's decision to deny habeas relief on this claim is therefore not debatable among reasonable

jurists.[2]

A state court may deny relief on procedural grounds and then reach the merits of the claim in the alternative. "[A] state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state-ground doctrine requires the federal courts to honor a state holding that is a sufficient basis for the state court judgment, even when the state court also relied on federal law." Harris v. Reed, 489 U.S. 255, 264 n.10 (1989). In sum, the Mississippi Supreme Court's ruling on the merits need not be addressed if its invocation of the procedural bar was constitutionally appropriate.

The Supreme Court has held that procedural bars are cognizable in habeas cases where (1) there is an independent and adequate state procedural rule and (2) the petitioner does not demonstrate both cause for the default and actual prejudice as a result of the violation of federal law, or demonstrate that a failure to consider the claims will result in a "miscarriage of justice." Coleman v. Johnson, 501 U.S. 722 (1991); Wainwright v. Sykes, 433 U.S. 72, 86 (1977).

_____

[2]With respect to each claim in a COA request, we are, in effect, evaluating the final decision of the district court denying the habeas petition -- asking whether this decision itself is debatable among reasonable jurists.

14

Williams argues that the state procedural bar in this case is inadequate because the Mississippi Supreme Court has applied the bar in death penalty cases in an inconsistent, almost random, fashion. In making this argument, Williams bears the "burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his direct appeal." Stokes v. Anderson, 123 F.3d 858, 860 (5th Cir. 1997)(citations omitted); see also Johnson v. Mississippi, 486 U.S. 578, 587 (1988)("A state procedural rule is not adequate unless it is strictly and regularly followed."). Williams must demonstrate that "the state has failed to apply the procedural bar to claims identical or similar to those raised by [Williams] himself." Id. Williams points to one case only to satisfy this burden -- Hunter v. State, 684 So.2d 625 (Miss. 1996).

In Hunter, the defendant was convicted of murder during the course of a robbery. At the guilt phase of the trial, the trial court failed to instruct the jury on the elements of robbery. The Mississippi Supreme Court found this failure to be a reversible error -- despite the fact that the defendant had not contemporaneously objected to the jury charge. Id. at 635.

The defendant's claim in Hunter substantially differs from the claim made here. In Hunter, the failure to instruct occurred at the guilt phase of the trial. It was Hunter's actual conviction for capital murder that was at issue. Here, Williams had already

15

been convicted of murder during the course of a kidnaping -- neither the fact of his conviction nor his guilt was in question. On the other hand, the sentencing jury's charge was to find -- and then weigh -- statutorily defined aggravating and mitigating circumstances. See MISS. CODE ANN. § 99-19-101. In Mississippi, one of the aggravating circumstances (i.e., aggravators) is kidnaping. However, unlike a conviction determination, the sentencing jury is not required to focus on each element of kidnaping, but instead on weighing the aggravated nature of the kidnaping against the mitigators. Compare MISS. CODE ANN. § 97-3-53 (defining the elements of kidnaping for the purpose of a kidnaping conviction) with MISS. CODE ANN. § 99-19-101 (listing kidnaping in a series of possible aggravating circumstances); see also Conley v. State, 790 So.2d 773, 794 (Miss. 2001)(interpreting the elements of kidnaping for a kidnaping conviction). In sum, the two cases are rationally distinguishable and the Mississippi Supreme Court's applying the procedural bar in Williams and not in Hunter is neither random nor arbitrary. Hunter is therefore inapt, and the procedural bar is adequate.

Given the procedural bar, for us to reach the merits of the claim, Williams must show either (1) that there was cause for his failure to object and prejudice from the failure to consider the alleged violation of federal law or (2) that there was a miscarriage of justice when the state court failed to consider the

16

merits of the claim.  See Coleman v. Thompson, 501 U.S. 722 (1991).

Williams does not give any reason for his failure to object to the sentencing jury charge.  There is no cause.  Furthermore, the failure to instruct did not prejudice Williams or result in a miscarriage of justice.

At the sentencing proceeding, the parties vigorously litigated the kidnaping aggravator.  Both parties introduced evidence that went straight to the question of whether Williams dragged Pierce into the woods against her will.  It is true that the prosecutor introduced the kidnaping conviction -- admittedly powerful evidence for the state's case at the sentencing.  The trial court nevertheless required the sentencing jury to find the kidnaping aggravator beyond a reasonable doubt.[3]  The evidence is more than ample to support the jury's finding.  Consequently, we find no prejudice or miscarriage of justice here.

Because Williams has not shown (1) that the procedural bar was inadequate, or (2) that there is a reason for his failure to object

---

[3]Williams also argues that the trial court invoked the principles of collateral estoppel at sentencing and that such a use of estoppel is unconstitutional.  The courts are split on the question of whether the use of collateral estoppel against a criminal defendant comports with the right to a jury trial.  See United States v. Gallardo-Mendez, 150 F.3d 1240, 1242 n.3 (10th Cir. 1998)("There is a clear split among our sister circuits that have ruled on the question of whether the government may use the doctrine of collateral estoppel to preclude a criminal defendant from raising an issue adjudicated in a prior criminal proceeding.").  That being said, this case does not involve the application of collateral estoppel against Williams.  The trial court did not find the kidnaping aggravator -- as a matter of law -- based on the kidnaping conviction.

17

and further that the failure to object resulted in actual prejudice, or (3) that the failure to consider these claims resulted in a miscarriage of justice, we hold that the district court's decision denying relief on this claim is not debatable among reasonable jurists. We therefore deny Williams's request for a COA on this claim.

IV

In sum, we hold that Williams has not made a substantial showing of the denial of a constitutional right with respect to any of his claims. Williams has not substantiated his claims that (1) there was insufficient evidence to support the kidnaping conviction; (2) he was entitled to have the prosecutor turn over evidence relating to Pierce's gang-rape; and (3) he was entitled to have the sentencing jury instructed on the elements of kidnaping. Williams's request for a certificate of appealability on each of these claims is

DENIED.