GRIFFIS, J.,
for the Court.
¶ 1. Patricia Thornhill (“Patricia”) appeals the chancellor’s modification of custody. We find no reversible error and affirm.
FACTS
¶ 2. On January 7, 1994, Patricia gave birth to her son, Canyon Van Dan. Canyon’s birth certificate listed Wilmon Van Dan (“Wilmon”) as Canyon’s father. Six weeks later, Patricia and Wilmon were married. Their marriage lasted over four years, until they separated in 1998.
¶ 3. On August 7, 1998, Patricia filed a complaint for divorce. In the complaint, Patricia asserted under oath that Canyon was “born unto the marriage relationship.” On August 17, 1998, Wilmon filed his answer to the complaint, counterclaim for divorce and motion for temporary relief. Wilmon’s answer admitted that one child was “born unto the marriage relationship,” and his counterclaim asserted that “one child was born unto the parties’ relationship.”
¶ 4. On March 5, 1999, Patricia filed a motion to amend pleadings and modify temporary order. Patricia asked the court to allow her an amendment and stated “would show unto this Court that the minor child alleged to have been born during the marriage is not a child of the marriage and not the child of [Wilmon] and [Wil-mon] has no right or entitlement to custody or visitation with said child as he is not his biological child.” Patricia restated this claim in her motion for modification of temporary order filed on May 7, 1999.
¶ 5. On September 8,1999, the Chancery Court of Walthall County entered an agreed final judgment of divorce on the grounds of irreconcilable differences. According to the terms of the agreed child custody, child support and property settlement agreement, Patricia and Wilmon agreed to share joint physical and legal custody of Canyon. Canyon was to live primarily with Patricia, and Wilmon was granted standard visitation rights. Both Patricia and Wilmon were represented by counsel. Paragraph 12 states that “[t]he provisions of this agreement and their legal effects have been fully explained to the parties, and each party acknowledges that this agreement is fair and equitable, and that it is being entered into voluntarily, and that it is not the result of any duress or undue influence.”
¶ 6. On October 20, 1999, approximately six weeks after the final judgment, Patricia filed a complaint that asked the chancellor to cite Wilmon for contempt. Her complaint did not allege that Wilmon was not Canyon’s father. The following January, Patricia amended the complaint to request a modification of the child support provisions based on Wilmon’s increased income. On April 11, 2000, the chancellor entered an order modifying child support, property issues, and visitation.
¶ 7. On March 12, 2001, Patricia filed a second complaint for contempt. Patricia again sought to modify the custody arrangement. Here again, her complaint did not allege that Wilmon was not Canyon’s father. Wilmon answered the complaint for contempt and filed a counterclaim that asked the chancellor to cite Patricia for contempt. On January 24, 2002, Wilmon amended his counterclaim to request pri *728 mary custody of Canyon. Wilmon alleged that Patricia was an unfit parent.
¶ 8. While the custody matter was pending, both Patricia and Wilmon remarried. Patricia married Gary Thornhill. Wilmon married his current wife, Kim.
¶ 9. On April 14, 2003, the chancellor issued his judgment that included his findings of facts and conclusions of law. The judgment began with the following finding:
3. The minor child of the parties, Canyon Van Dan, was born prior to the marriage with the Defendant, Wil-mon H. Van Dan, listed on the minor’s original birth certificate as father. The final judgment of divorce, approved by all parties adjudicated the Defendant as the father and the Plaintiff as the mother.
The chancellor found that there was a material change in circumstances that adversely affected the child. The chancellor considered the report of the guardian ad litem and provided a detailed analysis of the Albright factors. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). The chancellor awarded primary custody of Canyon to Wilmon and cited Patricia for contempt.'
¶ 10. Patricia then filed a Rule 60(b) motion to set aside the 2003 judgment. For the first time, Patricia alleged that the chancellor unilaterally made handwritten changes to the 1999 judgment which rendered the 1999 judgment void. Patricia argued that the changes were so drastic that there was no agreement between the parties, thereby rendering the 1999 judgment void. The chancellor denied Patricia’s motion.
¶ 11. On appeal, Patricia argues that: (1) the judgment of divorce was wrongfully modified by the chancellor without the parties’ consent; and (2) the chancellor committed manifest error in granting the modification since Wilmon is not the natural father of Canyon.
STANDARD OF REVIEW
¶ 12. This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. Sanderson v. Sanderson, 824 So.2d 623, 625-26 (¶ 8) (Miss.2002).
ANALYSIS

I. Did the chancellor improperly . change the custody agreement of the parties thereby rendering the 1999 judgment of divorce void ?

¶ 13. Paragraph III of the 1999 judgment of divorce initially read:
That one (1) child was born [words not legible], namely Canyon Tanner Van Dan, born January 7,1994.
The paragraph was changed to read:
That one (1) child was born to the parties, Wilmon Van Dan as father and Patricia Van Dan as Mother, namely Canyon Tanner Van Dan, born January 7,1994.
(emphasis added). Patricia argues that since the parties did not consent to the chancellor’s handwritten changes, the 1999 judgment is void. The record simply does not support Patricia’s argument.
¶ 14. Patricia and Wilmon were both present in open court, with counsel, when the chancellor made the changes and executed the judgment. The chancellor read the changes into the record, and neither Patricia nor Wilmon objected. Both parties announced their agreement with all of the provisions of the 1999 judgment.
¶ 15. In subsequent pleadings, Patricia referred to the 1999 judgment and sought *729 to enforce its provisions. Patricia also relied on the validity of the 1999 judgment when she decided to remarry. Indeed, Patricia continued with litigation for more than three years without any objection to the validity of the 1999 judgment. Patricia waited to assert this issue when she filed her Rule 60(b) motion in 2003. Clearly, the parties considered the 1999 judgment, including the handwritten changes, to be a valid and enforceable judgment.
¶ 16. The record before us does not clearly state what language was removed before the chancellor’s changes. The meaning, relevance or material nature of the change has not been shown. Neither Patricia nor Wilmon appealed the 1999 judgment. Instead, they both signed the 1999 judgment and confirmed to the chancellor that they had no objections to its entry. We are left with no evidence that the deleted provisions were in any way inconsistent with the remainder of the 1999 judgment. Accordingly, we find no merit to Patricia’s argument that the chancellor modified the 1999 judgment without the parties’ consent.
¶ 17. Motions for relief under Rule 60(b) are addressed to the sound discretion of the trial court. Rule 60 is a corrective device to be used in circumstances in which fraud, misrepresentation or newly discovered evidence demand the setting aside of a judgment. Montgomery v. Montgomery, 759 So.2d 1238, 1240(¶ 6)(Miss.2000); Askew v. Askew, 699 So.2d 515, 516 (Miss.1997). The record is void of any evidence to substantiate such a claim. We will not allow Patricia an opportunity to re-litigate the legal parentage of Canyon, a fact which is already settled. Askew, 699 So.2d at 520.
¶ 18. Therefore, we find this issue to be without merit.

II. Did the chancellor err by granting the modification?

¶ 19. A typical appeal that claims the chancellor erred in granting the modification begins with the appropriate standard that the chancellor was required to follow. For instance, “[i]n cases involving a request for modification of custody, the chancellor’s duty is to determine if there has been a material change in the circumstances since the award of initial custody which has adversely affected the child and which, in the best interests of the child, requires a change in custody.” Jones v. Jones, 878 So.2d 1061, 1065 (¶ 10)(Miss.Ct.App.2004); Sanford v. Arinder, 800 So.2d 1267, 1271(¶ 15)(Miss.Ct.App.2001). The burden of proof is on the movant to show by the preponderance of evidence that a material change in circumstances has occurred in the custodial home. Riley v. Doemer, 677 So.2d 740, 743 (Miss.1996). The non-custodial parent must satisfy a three-part test and prove: “a substantial change in circumstances of the custodial parent since the original custody decree, the substantial change’s adverse impact on the welfare of the child, and the necessity of the custody modification for the best interest of the child.” Sanford, 800 So.2d at 1272 (¶ 15) (citations omitted). Patricia does not make this argument.
¶ 20. Instead, Patricia argues that the chancellor, committed manifest error by granting the modification since Wilmon is not Canyon’s natural (ie., biological) father. Patricia begins her argument stating the presumption that the father named on the birth certificate is the natural father of the child. Miss.Code Ann. § 41-57-9. She claims that this presumption was overcome by testimony and a paternity test that indicates Wilmon is not the biological father of Canyon. Thus, the chancellor erred by taking custody from Patricia, Canyon’s biological mother, and *730 giving custody to Wilmon, Canyon’s non-biological father.
¶ 21. Patricia cites two principal cases: Grant v. Martin, 757 So.2d 264, 265(¶ 5)(Miss.2000); Simpson v. Rast, 258 So.2d 233, 236 (Miss.1972).
¶ 22. Patricia cites Grant for the proposition that there is a presumption in Mississippi that it is in a child’s best interest to remain with his/her natural par-entis). She argues that in a case where the natural parent has not voluntarily relinquished custody of a child it must be shown that the natural parent has either “(1) abandoned the child, or (2) the conduct of the parent is so immoral (as) to be detrimental to the child, or (3) the parent is unfit mentally or otherwise to have the custody of his or her child.” Grant, 757 So.2d at 265(115). Patricia claims that none of these three were proven. Thus, the chancellor was in error to grant custody to any person but Patricia.
¶23. In Grant, the biological mother and father of the children divorced and agreed in the divorce decree to give custody to the children’s paternal grandparent. Id. at (¶¶ 1-2). Several years later, the biological mother had remarried and requested custody of the children. Id. at (¶ 3). The supreme court held:
However, prior to today, this Court has consistently applied a different standard in deciding a custody dispute between a natural parent and a third party such as a grandparent, as follows:
[I]t is presumed that the best interests of the child will be preserved by it remaining with its parents or parent. In order to overcome this presumption there must be a clear showing that the parent has (1) abandoned the child, or (2) the conduct of the parent is so immoral {as} to be detrimental to the child, or (3) the parent is unfit mentally or otherwise to have the custody of his or her child.
Absent clear proof of one of the above circumstances, the natural parent is entitled to custody of his or her child.
Id. at (¶ 5) (citations omitted).
The supreme court reversed this Court’s decision to render the decision, and instead, remanded the case for a new trial on the merits of this standard. The court also held:
Second, we take this opportunity to consider the proper standard to be applied in a request for modification where the moving natural parent, or parents, have previously relinquished custody. Our law clearly has a strong presumption that a natural parent’s right to custody is superior to that of third parties, whether grandparents or others. This is as it should be. However, this Court has never before been asked to rule on whether the natural parents’ consent to and joinder in court proceedings granting custody to smh third parties should alter that presumption. Because stability in the lives of children is of such great importance, we have carefully weighed the impact of establishing an exception, or a new standard, for such instances. While we do not want to discourage the voluntary relinquishment of custody in dire circumstances where a parent, for whatever reason, is truly unable to provide the care and stability a child needs, neither do we want to encourage an irresponsible parent to relinquish their child’s custody to another for convenience sake, and then be able to come back into the child’s life years later and simply claim the natural parents’ presumption as it stands today.
Therefore we adopt a new standard and hold that a natural parent who voluntarily relinquishes custody of a minor child, through a court of competent ju *731 risdiction, has forfeited the right to rely on the existing natural parent presumption. A natural parent may reclaim custody of the child only upon showing by clear and convincing evidence that the change in custody is in the best interest of the child. This new rule not only reaffirms that the polestar consideration in all child custody cases is the best interest of the child, but also gives the chancellor the authority to make a “best interest” decision in voluntary relinquishment cases without being fettered by the presumption in favor of'natural parents which applies in other child custody cases.
Id. at (¶¶ 9-10)(emphasis added).
'We cannot read the announced new standard without reading the supreme court’s comment and direction.
¶ 24. Since Patricia agreed to the 1999 final judgment of divorce and child custody agreement, which clearly adjudicated Wil-mon as the “father” of Canyon, we interpret such action as an act that would voluntary relinquish Patricia’s right to the natural parent presumption in custody matters. Therefore, the chancellor was correct to consider the Albright factors and make a decision that was in Canyon’s best interest.
¶ 25. Patricia also argues that Simpson v. Rast, 258 So.2d 233, 236 (Miss.1972), stands for the proposition that “the natural parents of children have the natural right to the nurture, care and custody of their children.” Simpson and his wife, Patricia Ann, were divorced, and she was awarded custody of their three children. Id. at 235. Patricia Ann married Rast and lived with him for several years before she died. On her death, Simpson sought custody of the children from Rast. The chancellor granted custody to Rast. On appeal, the supreme court reversed and granted custody to Simpson. Id. at 237.
¶ 26. Simpson is simply not applicable here. Rast had no legal standing as the legal father of the children. Wilmon does. Although there are two judgments that declare Wilmon to be the father, Patricia argues that since he is not the “natural” father then he has no legal right to custody of Canyon.
¶ 27. Recently, in Griffith v. Pell, 881 So.2d 184 (Miss.2004), the supreme court considered a case that has similar issues to this case, and we believe it guides our decision here. In Griffith, the supreme court consolidated the appeal of two separate cases. Id. at 185 (¶ 1). The first case wás a divorce action between Robert and Sue Ann Pell. The second case was a paternity action that Sue Ann brought against Joseph Griffith. Id.
¶ 28. Before their marriage, Robert and Sue Ann began to live together and Sue Ann gave birth to a child. Id. Robert thought he was the father of the child and acted as such. Id. During the pendency of their divorce proceeding, Sue Ann gave birth to another child. Id. at (¶ 2). Robert questioned whether he was the father and moved the court for genetic testing to determine the paternity of first child. Robert was not the child’s biological father. Id. The chancellor ruled that Robert did not have “legal standing in law or fact on the issue of custody” and terminated Robert’s visitation rights. Id. at (¶ 3).
¶ 29. Sue Ann then commenced a paternity action against Joseph Griffith, the biological father of the child. Id. at (¶ 4). Sue Ann and Griffith entered “an agreed order declaring Griffith the biological father, ordering child support, and stating that all other matters would be decided by the chancellor at a later date.” Id. The two men then asked the chancellor to declare Robert the legal father of the child. They claimed that it would be in the child’s *732 best interest for Robert to continue as the child’s father and for Griffith to give up any parental rights that he may have. The chancellor denied this motion, set child support payments for Griffith and awarded him visitation. Id.
¶ 80. The supreme court consolidated both of these appeals. Id. at (¶ 5). For the court, Presiding Justice Waller wrote:
The chancellor held, and Sue Ann argues, that the paternity proceedings foreclosed any rights of custody or visitation Robert may have had with regard to the minor child. We disagree. Merely because another man was determined to be the minor child’s biological father does not automatically negate the father-daughter relationship held by Robert and the minor child. Indeed, in Logan v. Logan, 780 So.2d 1124 (Miss.1998), we held that the custody of a minor child should be awarded to its stepfather upon the divorce between the stepfather and the child’s biological mother. Id. at 1127. We reiterated our recognition of the doctrine of in loco parentis, [FN1] id. at 1126, which clearly applies to Robert.
FN1. A person acting in loco parentis is one who has assumed the status and obligations of a parent without a formal adoption. Logan v. Logan, 730 So.2d 1124, 1126 (Miss.1998). “Any person who takes a child of another into his home and treats it as a member of his family, providing parental supervision, support and education, as if it were his own child is said to stand [in loco parentis].” Id. (quoting W.R. Fairchild Constr. Co. v. Owens, 224 So.2d 571, 575 (Miss.1969)).
In Logan, we further held:
Where a stepfather, as an incident to a new marriage, has agreed to support the children of a previous marriage, or where he does so over a period of time and the mother and the children in good faith rely to their detriment on that support, the best interests of the children require entry of a child support decree against the stepfather. Thus, it follows that if a stepparent can be required to pay child support for a stepchild based on his support of the stepchild over a period of time, where it is in the best interests of the child, he should be allowed to have custody of the stepchild based on the affection for and support of that child over a period of time. With the burden should go the benefit.
Id. at 1126 (citation omitted & emphasis added).
Under Logan, because Robert supported and cared for the minor child as if she were his own natural child, under state law, he may be required to pay child support for the minor child. It therefore follows that he may be awarded custody and/or visitation rights with the minor child.
Griffith, 881 So.2d at 186 (¶¶ 6-8).
¶ 31. Patricia’s argument fails because, under Mississippi law, Wilmon is Canyon’s legal father and is entitled and subject to the rights, privileges and obligations thereof. Wilmon’s name on Canyon’s birth certificate has legal significance.[1] Next, as *733 discussed in Griffith and Logan, Wilmon’s continuous care of Canyon, as his son, during the marriage established his rights as Canyon’s legal father. Finally, the 1999 judgment of divorce clearly adjudicated that Wilmon was Canyon’s legal father.
¶ 32. The record supports Patricia’s acceptance of Wilmon as Canyon’s father. During the divorce hearings, Patricia testified that Wilmon was the “legal father” and that she was making no effort to dispute that fact. Canyon was repeatedly and consistently referred to as the “minor child of the parties,” and Patricia never objected. The chancellor specifically went through the factual elements of the 1999 judgment including the determination that Canyon was “born to the marriage.” When asked if the facts pertaining to the parentage of Canyon in the record were correct, Patricia answered “yes.” The chancellor was correct in finding Wilmon to be Canyon’s legal father.
¶ 33. Once it is determined that Wilmon is Canyon’s legal father, he obtains rights that cannot be subsequently relinquished unilaterally. Professor Shelton Hand correctly concludes:
The father of the illegitimate child may, however, render the child legitimate, and such rendition has the effect of establishing the child as a full heir at law of the father. Upon the establishment of the legitimate nature or status of the child, the father then has an equal claim with the mother to the parental and custodial rights to the child. In such a case, the best interest of the child would be the proper criterion for subsequent awards of custody of the child as between the two parents.
N. Shelton Hand, Mississippi Divorce, Alimony & Child Custody § 21-5 (6th ed.2003) (emphasis added). Therefore, we move to the issue of the modification of custody.
¶ 34. The best interest of the child is the polestar consideration in all cases dealing with child custody and visitation. Sellers v. Sellers, 638 So.2d 481, 485 (Miss.1994); Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). A modification of custody is warranted in the event that the complaining parent successfully shows that an application of the Albright factors reveals that there has been a material change in those circumstances which has an adverse effect on the child, and a modification of custody would be in the child’s best interest, considering the totality of the circumstances. Sanford 800 So.2d at 1272(¶ 18).
¶ 35. Here, the chancellor found a material change in Canyon’s custodial care. Patricia denied or prevented Wilmon’s visitation on numerous occasions. Canyon’s education was deliberately interrupted by Patricia several times to limit Wilmon’s participation in any necessary decisions. Additionally, Patricia involved Canyon in arguments between her and Wilmon. Finally, the guardian ad litem opined that Canyon had been substantially impacted by Patricia’s attitude and approach of care and that the effects would worsen throughout Canyon’s life.
¶ 36. The chancellor found that Patricia’s actions adversely affected Canyon. The chancellor agreed with the guardian ad litem and found Patricia’s actions to be open, intentional, and continuous. Based on this evidence, the chancellor found that Patricia prevented or denied a healthy relationship between Wilmon and Canyon. Therefore, the chancellor proceeded to determine whether a change in custody was warranted.
*734 ¶ 37. The chancellor addressed and analyzed each of the Albright factors in his findings. The findings were consistent with the testimony presented. The chancellor found that the primary blame for Canyon’s emotional distress rested with Patricia. Although there was no expert testimony, the chancellor expressed concern about Patricia’s mental and emotional health due to her extreme behavior. Wil-mon was found to have greater capacity and willingness to provide primary care for Canyon. Canyon’s church participation was encouraged by Wilmon. The chancellor found that Canyon’s best interest would be served by modifying his custody to Wilmon.
¶ 38. As none of the Albright factors favored Patricia, the chancellor was correct in granting custody to Wilmon. Therefore, we find no reversible error. The judgment of the chancery court granting the modification of custody to Wilmon is affirmed.
¶ 39. THE JUDGMENT OF THE WALTHALL COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES, P.J., MYERS, CHANDLER, BARNES AND ISHEE, JJ. CONCUR. KING, C.J., LEE, P.J. AND IRVING, J., CONCUR IN RESULT ONLY.

. Mississippi Code Annotated Section 41-57-23(2) and (3)(Rev.2003) provide a procedure, for a child born to a mother who is unmarried, to have the child’s father's name to be added to the birth certificate. The fact that Wilmon was listed as Canyon's father on the birth certificate establishes that Wilmon signed the voluntary acknowledgment of paternity.