IRVING, P.J.,
for the Court:
■ ¶ 1. Henderson pleaded guilty to kidnapping I.H., a four-year-old child, whom he was raising as his own and whom he believed to be his own daughter. By judgment entered on September 2, 2009, he was convicted and sentenced to a five-year term of imprisonment in the custody of the Mississippi Department of Corrections, with four years and four months suspended, and five years of supervised probation. On August 31, 2012, Henderson filed a motion to set aside his conviction. The trial court found that the motion was timely filed, but denied it as being procedurally barred because it raised a defense — in loco parentis — that could have been raised at Henderson’s guilty-plea hearing. This timely appeal followed.
¶ 2. We find the factual basis for the guilty plea insufficient and reverse the judgment of the circuit court denying Henderson’s motion for post-conviction relief (PCR) and remand this case for further proceedings consistent with this opinion.
FACTS ■
¶ 3. While Henderson was a freshman at Rust College in Holly Springs, Mississippi, a young lady he was dating became pregnant. Believing he was the father, Henderson dropped out of college and *549 joined the United States Air Force to provide for his new family. Although they planned to marry before the child was born, the delivery occurred early while Henderson was still in basic training. He was unable to be present at the birth and, although I.H. was given his last name, no father’s name was listed on the birth certificate. Henderson and I.H.’s mother were married on May 28, 2004.
¶ 4. Henderson raised I.H. as his daughter, claiming her and I.H.’s mother as his dependents on his military-benefits paperwork, and lived with them on base in Louisiana. At one point, I.H.’s mother left her with Henderson and returned home to Canton, Mississippi, to live with her mother. During this period, Henderson’s mother moved from Michigan to Louisiana to help him care for I.H. I.H.’s mother returned at some point and took I.H. back-to Mississippi with her. Although Henderson and I.H.’s mother were having marital difficulties and living apart, no custody agreement was entered concerning I.H.
¶ 5. In November 2008, Henderson visited I.H. in Canton, where they stayed at a local hotel. As he prepared to dress her for school the following day, he became upset when he discovered that she did not have any clean clothes. He then decided to take her back to his home in Louisiana. I.H.’s mother called the Madison County Sheriffs Office, and the sheriffs office contacted Henderson by phone. Henderson explained that he planned to seek a divorce and custody of I.H. and that he did not intend to return her to her mother. Upon learning that Henderson and I.H.’s mother were married and that there was no custody decree awarding sole physical custody to the mother, the sheriffs office took no further action.
¶ 6. Shortly thereafter, however, United States marshals arrested Henderson for kidnapping. He was unable to make bond and remained in jail from the time of his arrest in November 2008 until August 81, 2009, when he pleaded guilty to kidnapping pursuant to a plea agreement. What transpired at the guilty-plea hearing will be discussed hereafter.
STANDARD OF REVIEW
¶ 7. The Mississippi Supreme Court has announced the applicable standard of review when a circuit court denies a petitioner’s PCR motion:
When reviewing a lower court’s decision to deny a petition for post[-] conviction reliefi,] [an appellate court] will not disturb the trial court’s factual findings unless they are found to be clearly erroneous. However, where questions of law are raised[,] the applicable standard of review is de novo.
Brown v. State, 731 So.2d 595, 598 (¶ 6) (Miss.1999) (internal citation omitted).
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 8. Henderson was indicted for kidnapping I.H. in violation of Mississippi Code Annotated section 97-3-53 (Supp.2013), which provides: “Any person who, without lawful authority ..., shall forcibly seize ..., or shall inveigle or kidnap ... any child under the age of sixteen (16) years against the will of the parents or guardian or person having the lawful custody of the child” shall be guilty of kidnapping. (Emphasis added). Therefore, the State had to prove that when Henderson took I.H., he had no right to do so. Henderson testified at the PCR hearing that, at the time he took I.H. to Louisiana, he believed that he was her biological father,[1] and the State offered no evidence tending to dis *550 prove Henderson’s testimony. All of Henderson’s actions following his learning that his future wife was pregnant certainly support the sincerity and reasonableness of his belief. For example, even after I.H.’s mother filed an affidavit stating that Henderson was not I.H.’s father, six months later, Henderson signed a joint complaint for divorce wherein he swore that he was I.H.’s father and agreed to pay child support for her.
¶ 9. The law is clear that absent a court decree denying him custody, a natural father cannot be convicted of kidnapping his own child. See State v. Powe, 107 Miss. 770, 776, 66 So. 207, 208 (1914). Furthermore, a person does not have to be the biological parent of a child to have legally recognizable rights concerning the child. In J.P.M. v. T.D.M., 932 So.2d 760, 765-70 (¶¶ 14-26) (Miss.2006), the Mississippi Supreme Court upheld a chancellor’s ruling that a man who had been raising a child as his own should be given custody of the child despite the fact that another man was proven to be the biological father. In so ruling, the supreme court discussed with approval the doctrine of in loco paren-tis. Id. at 768-70 (¶¶ 20-26). In J.P.M, the court relied upon Griffith v. Pell, 881 So.2d 184 (Miss.2004). In Pell, during divorce proceedings, the husband, who had been raising the child as his own, discovered that he was not the child’s father. Id. at 185 (¶ 2). The trial court held that he had no standing to pursue custody. Id. at (¶ 3). On appeal, the supreme court, in reversing the trial court’s judgment, reaffirmed the doctrine of in loco parentis: “Any person who takes a child of another into his home and treats [the child] as a member of his family, providing parental supervision, support and education, as if [the child] were his own ... is said to stand in loco parentis.” Id. at 186 n. 1 (citations omitted).
¶ 10. In Thornhill v. Van Dan, 918 So.2d 725 (Miss.Ct.App.2005), we considered a custody dispute following the judgment of divorce. The wife, relying on a paternity test establishing that her former husband was not the biological father of the child, appealed a chancellor’s ruling giving the former husband custody of the child. Id. at 729 (¶20). Although there was no reference to the doctrine of in loco parentis, we held that a man who raises a child as his own, in the belief that the child is his own, “obtains rights that cannot be subsequently relinquished unilaterally.” Id. at 733 (¶ 33).
¶ 11. In Byrd v. United States, 705 A.2d 629, 632 (D.C.1997), the court held that a stepparent who was acting in loco parentis was a parent within the meaning of a District of Columbia statute that excepted parents from the crime of kidnapping. The Byrd opinion relied in part upon United States v. Floyd, 81 F.3d 1517 (10th Cir.1996). In Floyd, the court considered the federal kidnapping statute, 18 U.S.C. § 1201(a)(1) (1988), which provided: “Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when ... the person is willfully transported in interstate or foreign commerce” shall be guilty of kidnapping. (Emphasis added). Floyd, a fugitive from justice, developed a relationship with a woman who had a daughter. Floyd raised the daughter as his own child. The daughter later met a man, became pregnant by him, and gave birth to a child without the man’s knowledge. Floyd, as a matter of convenience, married the daughter, and also raised the daughter’s child as his own. Sometime following the marriage, the daughter died in a car accident. Floyd, 81 F.3d at 1520. Floyd relinquished custody of the child to the *551 Staté of Oklahoma a few days later. Id. at 1521. Approximately four years later, Floyd decided to kidnap the child. He was subsequently indicted under section 1201 for kidnapping. Id. at 1521-22.
¶ 12. At trial, Floyd argued that he could not be convicted of kidnapping because he was acting as the child’s “parent.” Id. at 1522. The court considered the definitions of “parent”:
The Oxford English Dictionary, Vol. VII at 222 (2nd ed. 1989) defines “parent” as both “a person who has begotten or borne a child; a father or mother” and “a person who holds the position or exercises the functions of a parent; a protector, guardian.” Similarly, Webster’s Third New International Dictionary at 1641 (4th ed. 1976) defines “parent” as “one that begets or brings forth offspring” and “a person standing in loco parentis although not a natural parent.” Accord, Black’s Law Dictionary at 1114 (6th ed. 1990) (“In common and ordinary usage parent comprehends much more than mere fact of who was responsible for child’s conception and birth and is commonly understood to describe and refer to a person or persons who share mutual love and affection with a child and who supply child support and maintenance, instruction, discipline, and guidance”).
Floyd, 81 F.3d at 1523 (citation omitted). The court continued: “We are persuaded that a surrogate parent, who has not voluntarily abandoned the responsibilities of a biological parent prior to the time he or she carries a child away, is not subject to prosecution under the statute.” Id. at 1524. However, the court ultimately found that Floyd had abandoned his rights to the child when he voluntarily tendered custody of the child to the State of Oklahoma. Id.
¶ 13. In the instant case, the State argues that it did not matter whether the defendant acted in loco parentis at the time he took I.H. home with him to Louisiana. In support of its position, the State cites Thomas v. State, 107 So.3d 1046 (Miss.Ct.App.2012); Culbert v. State, 947 So.2d 970 (Miss.Ct.App.2006); Williams v. Puckett, 283 F.3d 272, 278 (5th Cir.2002); and Hughes v. State, 401 So.2d 1100, 1105 (Miss.1981). However, none of these cases support the State’s position. In Thomas, the defendant’s conviction for kidnapping and killing his ex-wife and their two children was upheld, but there was an active restraining order against him at the time. Thomas, 107 So.3d at 1047 (¶ 1). In this case, there is no custody decree or any other court order denying him custody of, or access to, I.H. The facts in Culbert are set forth in Culbert v. State, 800 So.2d 546 (Miss.Ct.App.2001), which involved the defendant picking up a minor child at school, keeping her overnight, raping her, and returning her to her mother the next day. There is no mention of the defendant being married to the mother or having any sort of parental or custodial rights to the child. Id. at 548 (¶¶ 2-3). Culbert is clearly distinguishable, as there is no evidence that Henderson harmed I.H. in any way, and there is a plethora of evidence establishing a sincere parental relationship with I.H. Puckett and Hughes are not at all analogous to our case. Puckett involves the kidnapping, rape, and murder of a young woman. Puckett, 283 F.3d at 276. Hughes involves a defendant kidnapping and raping a taxicab driver. Hughes, 401 So.2d at 1102.
¶ 14. The State’s position, that nothing short of biological parenthood could protect Henderson from prosecution, is not borne out by our case law. In denying Henderson’s PCR motion, the trial judge accepted the State’s position. We do not know if the judge who took Henderson’s guilty plea was of the same view, as the *552 judge did not comment upon Henderson’s status once it was established during the plea colloquy:
THE COURT: I would presume you’re related to the victim?
HENDERSON: Yes.
THE COURT: How are you related? HENDERSON: My wife’s daughter I guess is the best way to put it.
THE COURT: Would it be your daughter?
HENDERSON: Yes.
THE COURT: Your natural daughter?
THE PROSECUTOR: Your Honor that’s — that’s the — crux of it is our evidence shows that, no, he is not the natural father of her. He’s been raising the child as his own and he does have a natural daughter with his wife as well.
The court then ascertained the name of the mother and asked what Henderson intended to do with the child. Henderson responded: “Nothing. Just petition for custody and divorce.” After ascertaining that Henderson and his wife were separated at the time Henderson took the child, the court moved directly to asking for the State’s sentencing recommendation.
¶ 15. The motion to set aside the conviction alleged that Henderson lacked the mens rea to commit the offense because he was, in fact, acting in loco parentis to I.H. In the hearing on the motion, Henderson argued that he could not be guilty of kidnapping because he was acting in loco parentis for the child at the time he took her. The trial court’s denial of the motion was based solely on the fact that Henderson should have presented the defense of in loco parentis instead of entering his guilty plea.[2] The court noted that at the hearing on the motion, the State conceded that Henderson was acting in loco parentis for the child at the time he took her:
THE COURT: [D]oes the State stipulate to that effect?
ADA: Yes, your Honor. With this caveat. He was living out of state. He was visiting the child, the children, his natural child and the non-biological child, and he took them during one of these visitations.
[[Image here]]
THE COURT: Okay. So the State stipulates that he was serving in loco parentis of the child.
¶ 16. The State conceded that Henderson was raising the child as his own, apparently without considering that this was a defense to the charge of kidnapping. The court stated, “Whether or not he acted as the father is not the question.” We respectfully disagree. Based upon the compelling evidence at the hearing establishing that Henderson was acting in loco parentis for the child, and the State’s stipulation of this fact, there was a complete defense to the charge. Neither the defense counsel, the prosecutor, nor the judge addressed this issue.
*553 ¶ 17. A guilty plea is binding upon a defendant only when it is voluntarily and intelligently entered. Alexander v. State, 605 So.2d 1170, 1172 (Miss.1992) (citing Myers v. State, 583 So.2d 174, 177 (Miss.1991)). A sufficient factual basis for the guilty plea is essential to a valid guilty plea. Rule 8.04(A)(3) of the Uniform Rules of Circuit and County Court provides that “[bjefore the [circuit] court may accept a plea of guilty, the court must determine that the plea is voluntarily and intelligently made and that there is a factual basis for the plea.”
¶ 18. In Reeder v. State, 783 So.2d 711, 717 (¶ 20) (Miss.2001), the Mississippi Supreme Court stated:
It is essential that an accused have knowledge of the critical elements of the charge against him, that he fully understand the charge, how it involves him, the effects of a guilty plea to the charge, and what might happen to him in the sentencing phase as a result of having entered the plea of guilty.
(Citation omitted).
¶ 19. This Court will review the record to determine if there is a factual basis for a guilty plea. Moore v. State, 781 So.2d 159, 164 (Miss.Ct.App.2001). “‘A factual basis is an essential part of the constitutionally valid and enforceable decision to plead guilty.’ ” Austin v. State, 734 So.2d 234, 236 (¶7) (Miss.Ct.App.1999) (quoting Lott v. State, 597 So.2d 627, 628 (Miss.1992)). “A plea is voluntary if the defendant knows what the elements are of the charge against him[,] including an understanding of the charge and its relation to him.... ” Wilson v. State, 577 So.2d 394, 396-97 (Miss.1991). Our supreme court has further explained that “[t]he factual-basis component of the rule requires that, ‘before it may accept the plea, the circuit court have before it, inter alia, substantial evidence that the accused did commit the legally defined offense to which he is offering the plea.’ ” Burrough v. State, 9 So.3d 368, 373 (¶ 14) (Miss.2009) (quoting Corley v. State, 585 So.2d 765, 767 (Miss.1991)). Ultimately, enough facts must have been presented to convince the circuit court that “the prosecution could prove the accused guilty of the crime charged.” Id. (quoting Corley, 585 So.2d at 767).
¶ 20. In Aucoin v. State, 17 So.3d 142, 147 (¶ 14) (Miss.Ct.App.2009), this Court stated:
[T]he requirement of a factual basis for a defendant’s plea is not a mere formality of the plea process, but it is required as part of a “constitutionally valid and enforceable decision to plead guilty.” Carter v. State, 775 So.2d 91, 98 (¶ 28) (Miss.1999) (quoting Lott, 597 So.2d at 628). Before a circuit court judge is authorized to accept an accused’s plea to a felony offense and thereafter potentially deprive the accused of years of his liberty, the judge and any reviewing court must be able to ascertain from the record those facts which are “sufficiently specific to allow the court to determine that the defendant’s conduct was within the ambit of that defined as criminal.” Lott, 597 So.2d at 628.
¶21. Henderson argues on appeal that there was an insufficient factual basis for his guilty plea. We agree. It is clear that the trial court failed to recognize the significance of the State’s concession that Henderson had been raising the child as his own. In responding to the in loco parentis argument on appeal, the State addresses only whether it was “newly discovered evidence” sufficient to excuse an untimely motion to set aside the conviction. The trial court has already correctly ruled, however, that the motion was timely. Even if Henderson’s PCR motion was untimely, the facts here establish an exception to any procedural bar— *554 Henderson’s actual innocence of the crime of kidnapping.
¶ 22. In Trotter v. State, 907 So.2d 397 (Miss.Ct.App.2005), this Court discussed the “actual innocence” exception to the procedural bars to obtaining post-conviction relief. Although we held that being “passed out” during the commission of a crime would not make one who was guilty of murder as an accomplice actually innocent, we acknowledged the “actual innocence” doctrine:
The United States Supreme Court has held that, notwithstanding the time bar imposed on most collateral challenges to guilty pleas, a petitioner’s claim can be reviewed if he can establish that the constitutional error “has probably resulted in the conviction of one who is actually innocent.” Bousley v. United States, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (quoting Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2678, 91 L.Ed.2d 397 (1986)). To demonstrate actual innocence, the petitioner must demonstrate that, “ ‘in light of all the evidence,’ ‘it is more likely than not that no reasonable juror would have convicted him.’ ” Id. (quoting Schlup v. Delo, 513 U.S. 298, 327-28, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)). It is important to note that, in this context, “ ‘actual innocence’ means factual innocence, not mere legal insufficiency.’ ” Id. at 623-24, 118 S.Ct. 1604 (quoting Sawyer v. Whitley, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)).
Id. at 401 (¶ 12).
¶ 23. On the facts of this case, including the State’s stipulation that Henderson was acting in loco parentis over I.H. when he took her home to live with him, Henderson was actually innocent of the kidnapping charge.
¶ 24. For the foregoing reasons, we find that the trial court erroneously denied Henderson’s PCR motion. Because the State has conceded that Henderson was acting in loco parentis with regard to I.H., there was no factual basis to accept Henderson’s plea of guilty to kidnapping her. We therefore reverse and render the trial court’s judgment denying Henderson’s PCR motion and remand this case to the active docket of the Madison County Circuit Court for further proceedings as may be determined by the State. To be clear, we simply hold that based upon the State’s concession that Henderson was acting in loco parentis with I.H. at the time the kidnapping occurred, the trial court was deprived of a factual basis for accepting Henderson’s guilty plea.
¶ 25. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS REVERSED AND RENDERED, AND THIS CASE IS REMANDED TO THE ACTIVE DOCKET OF MADISON COUNTY. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ„ CONCUR.

. Paternity testing later eliminated Henderson as I.H.’s biological father.

. Henderson argues that the fact that no Mississippi cases have applied the in loco paren-tis doctrine as a defense in a kidnapping case makes this a ‘'novel” issue that he was not required to raise before pleading guilty. He cites Lockett v. State, 614 So.2d 888, 893 (Miss.1992), cert. denied, 510 U.S. 1040, 114 S.Ct. 681, 126 L.Ed.2d 649 (1994) (procedural bar should not apply if "the claim is so novel that it has not previously been litigated”), and Crawford v. State, 867 So.2d 196, 202 (¶ 5) (Miss.2003) (PCR review limited to "errors which in practical reality could not or should not have been raised at trial....”). Henderson argues that the novelty of the in loco parentis defense to the kidnapping charges precludes waiver. Due to our finding regarding the factual basis for the guilty plea, we find it unnecessary to address this argument.