GRIFFIS, J.,
Concurring in Part and Dissenting in Part:
¶ 40. I concur with the majority on all issues except Issue II. As to Issue II, I am of the opinion that the chancellor abused his discretion, and therefore, I respectfully dissent.
¶ 41. The Mississippi Supreme Court often cites the rule that the “polestar consideration in child custody cases is the best interest and welfare of the child.” Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). Indeed, recently, the court cited the rule that “chancellors are charged with considering the ‘totality of the circumstances.’” Giannaris v. Giannaris, 960 So.2d 462, 467(¶ 10) (Miss.2007)(quoting Kavanaugh v. Carraway, 435 So.2d 697, 700 (Miss.1983)).
¶ 42. I am of the opinion that all child support agreements must be interpreted in light of both of these rules. In McCord v. Healthcare Recoveries, Inc., 960 So.2d 399, 405(¶ 13) (Miss.2007) (citation omitted), the supreme court held that abuse of discretion may be found where the appellate court has a “ ‘definite and firm conviction’ that the court below committed a clear error of judgment and the conclusion it reached upon a weighing of the relevant factors.” Here, I have such definite and firm conviction that the chancellor committed clear error and that the chancellor’s findings were not based upon sufficient evidence.
¶ 43. The Child Custody, Child Support and Property Settlement Agreement provided the following language for the payment of college expenses:
Husband and Wife agree to each be responsible for and shall pay one-half (1/2) of all reasonable and necessary costs of a college education for each child, provided that each child applies for and uses every reasonable effort to obtain any available grant-in-aid, pell grant, scholarships and such other financial aid available for assistance in payment of tuition; that each child maintains full time college status and maintains a 2.0 grade point average. Reasonable and necessary costs of college education shall be defined as all *283 tuition, books, fees and the costs of on-campus housing, and any such other costs as may be necessary for the minor children’s college education. ...
¶ 44. The trial was held on April 3 and May 2, 2006. On July 10, 2006, the chancellor entered the opinion of the court and made the following findings of fact and conclusions of law on the college expenses:
At the end of the Fall 2004 semester, Molly’s grade point average was 1.40. At the end of the Spring 2005 semester, Molly’s grade point average was 1.55. Angela argues that the term “maintains” in the Agreement is ambiguous and should be interpreted on a case-by-case basis of how long each child should have to attain and maintain a 2.0 grade point average. However, this would require constant court intervention to determine case-by-case time periods for grade point averages. Likewise, it would leave all parties, including the children, in a constant state of ambiguity. Instead, this Court chooses to interpret the term “maintains” in a reasonable fashion. College students are given specific grade point averages on a semester basis; colleges have determined that a semester is an adequate period of time within which to determine how successfully a student is comprehending information. Therefore, in the absence of a stated period of time, it is reasonable to interpret grade point averages in terms of semesters.
Each of the parties’ daughters failed to maintain a 2.0 grade point average after her first semester in college. Therefore, Kevin was relieved of any further obligation to pay their college expenses after their first semesters. While the Court is hesitant to enforce a provision with such a seemingly harsh result, to do otherwise would completely strip the requirement of maintaining a 2.0 grade point average of all meaning.
The chancellor’s final judgment was entered on September 11, 2006.
¶ 45. The essence of the chancellor’s decision is that since both daughters failed to have a 2.0 grade point average after their first semester, Kevin’s obligation to pay for half of their college education is to be terminated immediately. I cannot conclude that this finding was based on the credible evidence, a totality of the circumstances, or with consideration to the best interests of the children.
A. Molly
¶ 46. Molly graduated from high school in May 2004. She attended community college during the summer of 2004. She completed three hours of course work, made a C, and had a grade point average of 2.0. In the fall of 2004, Molly attended Mississippi State University, and she earned a 1.50 grade point average. The chancellor’s decision stops here. The chancellor determined that since she failed to maintain a 2.0 grade point average then Kevin’s obligation to pay for her college education terminated.
¶ 47. The first problem with this analysis is that Kevin did not seek to modify the child support obligation after this semester. In fadt, it was almost six months after the fall semester that Kevin asked for relief. On June 29, 2005, Kevin filed his counterclaim in which he first asked for the court to terminate his obligation for the college expenses of Molly. Based on the timing of this filing, Kevin was obligated to pay one-half of all college expenses incurred through June 29, 2005, at a minimum. Thus, the chancellor clearly abused his discretion in forgiving Kevin of the obligation to pay for one-half of Molly’s college expenses incurred before June 29, 2005. I would remand this case to the *284 chancellor to calculate the amount owed through June 29, 2005, which would include all expenses for the Spring 2005 and Summer 2005 terms.
¶ 48. The evidence presented revealed that, in the spring of 2005, Molly improved her grade point average to a 1.75, and her overall grade point average, with the community college course transfer, was a 1.55. At this point, Molly’s performance was certainly not stellar. However, the evidence presented at trial revealed that Molly attended community college over the summer of 2005. She completed twelve hours and earned high enough grades so that her total grade point average of community college courses was a 3.40. This accomplishment indicates that Molly does in fact have the ability to complete her higher education successfully.
¶ 49. The only evidence offered from Mississippi State University was a statement on university letterhead that provided, “The information shown is as of the current term.... Current Term: Fall Semester 2005.” Exhibit 23. This document reveals that Molly was at Mississippi State for the Fall Semester of 2005, and that Molly’s “overall” grade point average was a 2.23.
¶ 50. At the hearing, Kevin did not offer an official transcript showing either child’s college performance. Kevin subpoenaed Molly to appear at the hearing. She did and was not asked what her grade point average was. To prevail on his claim, Kevin had the burden of offering credible evidence about Molly’s grades. Either a transcript or oral testimony from Molly would suffice. The only credible evidence was the Mississippi State University statement that indicated Molly’s overall grade point average, at the time the matter was before the chancellor, was a 2.23.
¶ 51. On July 25, 2006, after the court’s opinion, Angela filed a Motion to Make Addition to the Record. In this motion, Angela attached a document from Mississippi State, which revealed that Molly made a C in College Algebra and a B in Introduction to Physical Education, both three-hour courses, and her overall grade point average, after the Summer Term of 2006, was a 2.10.
¶ 52. I cannot accept the chancellor’s determination that since Molly failed to obtain a 2.0 grade point average after her first semester, Kevin’s obligation to pay is terminated. The obligation is on Kevin to file for a modification in a timely manner. He did not. When Kevin filed his counterclaim, Molly’s collegiate performance was satisfactory. Molly’s efforts should be rewarded, not punished.
¶ 53. When a parent is ordered to pay sums of money for a child’s college expenses, that payment constitutes an award of child support. Mizell v. Mizell, 708 So.2d 55, 60(¶ 23) (Miss.1998). A decrease in that child support cannot be made retroactively. See Thurman v. Thurman, 559 So.2d 1014, 1016 (Miss.1990). In holding that a chancellor’s reduction of past child support payments was manifest error, the supreme court stated that “once child support payments become past due they become vested and cannot be modified.” Id. (citing Brand v. Brand, 482 So.2d 236, 237 (Miss.1986); Hailey v. Holden, 457 So.2d 947, 951 (Miss.1984); Hambrick v. Prestwood, 382 So.2d 474, 476 (Miss.1980)). “[A] court cannot reheve the civil liability for support payments that have already accrued.” Hailey, 457 So.2d at 951 (citing Lewis v. Lewis, 213 Miss. 434, 438, 57 So.2d 163, 165 (1952)).
¶ 54. Relieving the obligation of a parent to pay for a portion of a child’s college expenses should be no different than a modification of child support. The chan *285 cellor should consider the totality of the evidence, certainly all evidence through the date of the filing or the hearing, before making such a critical determination that will affect a child of the parties. The chancellor failed to do so. I would reverse, render, and remand for the chancellor to calculate the amount of Molly’s college expenses that are owed by Kevin and enter a judgment in such amount.
B. Ashley
¶ 55. Ashley presents an even more confusing issue. The original counterclaim did not ask for relief from the requirement to pay for one-half of Ashley’s college expenses. On January 27, 2006, Kevin filed a motion for leave to file amended counterclaim that would ask the court to terminate his obligation to pay Ashley’s expenses. On February 1, 2006, Angela’s attorney consented to Kevin filing an amended counterclaim. Thus, in February 2006, Kevin asserted a claim that his obligation for payment of Ashley’s expenses should be terminated.
¶ 56. The only evidence of Ashley’s grades appears to be an e-mail from Ashley to Kevin. It shows that Ashley took 13 course hours, including: English Composition I, three credits, mid-term grade A, final grade F, and twenty-seven absences; Early U.S. History, three credits, midterm grade F, final grade D, and no information as to the number of absences; College Algebra, three credits, mid-term grade C, final grade D, and four absences; General Psychology, three credits, midterm grade C, final grade C, and fourteen absences; and an Honors Forum, one credit with a “S” final grade. This report does not indicate her grade point average. Certainly, an F, two Ds and a C does not equal a 2.0 grade point average. However, we do not know how her participation in the Honors Forum would be considered in the calculation of her grade point average. Ashley was not called to testify at the trial, and Kevin did not introduce her official transcript from Mississippi State University-
¶ 57. On July 25, 2006, after the court’s opinion, Angela filed a Motion to Make Addition to the Record. In this motion, Angela attached official transcripts showing that both girls had improved their grades. In the Spring Semester of 2006, Ashley made an A in English Composition I, an A in Public Speaking, and A in Introduction to Mass Media, and a B in College Algebra. Also, a transcript from Holmes Community College revealed that Ashley made a B in American National Government.
¶ 58. Hence, I cannot accept the chancellor’s determination that Ashley failed to obtain a 2.0 grade point average. Kevin has failed to produce sufficient credible evidence to support such finding. I would reverse and render on the issue of Kevin’s obligation to pay one-half of Ashley’s college education and would remand for the chancellor to calculate the amount of Ashley’s college expenses that are owed by Kevin.
¶ 59. The chancellor recognized that his strict interpretation of the college expense provision created a harsh result. The chancellor reasoned that “to do otherwise would completely strip the requirement of maintaining a 2.0 grade point average of all meaning.” The chancellor’s result was indeed harsh. Harsh as to the child whose best interest and welfare he was to place as the “polestar consideration.” I am of the opinion that the chancellor abused his discretion in relieving Kevin of his obligation to pay one-half of the college expenses of his daughters. Certainly, the chancellor did not consider the children’s best interest or the totality of the circum *286 stances. For these reasons, I respectfully dissent as to Issue II.
LEE, P.J., BARNES AND ISHEE, JJ., JOIN THIS SEPARATE OPINION.